THE WEST JERSEY AND SEASHORE RAILROAD COMPANY, PLAINTIFF IN ERROR, v. EDWARD WELSH, DEFENDANT IN ERROR.

*Argued November 30, 1898—Decided March 6. 1899.*

1. A servant has implied authority to do what is necessary for the protection of his master's property which is entrusted to him or for fulfilling the duty which he has to perform for the master.

2. A brakeman in the employ of a railroad company and one of a crew in charge of a freight train of the company has implied authority to eject a trespasser from the train.

3. The inference of implied authority arising from the brakeman's employment, from his custody of the company's property and from the duty owed to the master in respect to the train, will not be overcome by proof that the instructions of the company to its servants expressly required freight conductors not to permit unauthorized persons to ride upon freight trains.

4. The company will be liable for an injury to a person who was a trespasser on its freight train, occasioned by the use of excessive or inappropriate force by a brakeman in ejecting him from the train.

On error to the Supreme Court.

For the plaintiff in error, *Joseph H. Gaskill.*

For the defendant in error, *Howard Carrow.*

The opinion of the court was delivered by.

MAGIE, CHIEF JUSTICE.   The record returned with this writ of error discloses an action of tort by Welsh (an infant suing by a next friend), who is the defendant in error, against the West Jersey and Seashore Railroad Company, which is the plaintiff in error.   The declaration charged that the company, by its servants, assaulted Welsh while riding on a freight train of the company and wilfully and maliciously threw him from the train while it was in motion, whereby he was injured.   The plea was the general issue.   The case was tried in the Camden Circuit and resulted in a verdict for Welsh, on which judgment has been entered in the Supreme Court.

The action shown by the pleadings was against a corporation for an assault and battery committed by it by its servants.

The bills of exception show that at the close of the evidence for Welsh it plainly appeared that he was a trespasser upon the freight train in question, having got on it for the purpose of stealing a ride without right or permission.   But the jury could also find that a person in the employ of the company and one of those in charge of the freight train, and either a conductor or brakeman, kicked Welsh off the train while it was in motion and that serious injury to him resulted therefrom.

At the close of Welsh's evidence a motion to nonsuit was made and denied, and an exception was allowed and sealed to the denial, which is made the ground of one of the assignments of error.

The motion to nonsuit was pressed upon the ground that to make out the action shown in the declaration the evidence must satisfactorily establish that the act which occasioned Welsh's injury was done by the authority of the company, either express or implied, and the contention was that, there being no evidence of express authority, there was no justifiable inference from the evidence that the servant, whether

conductor or brakeman, in ejecting Welsh from the train, had implied authority so to do.

At the close of Welsh's case the only evidence from which an implication of such authority could be claimed was that the person who kicked him off the train was an employe of the company and one of those in charge of the train.

But after the refusal to nonsuit the company proceeded to call witnesses, and their evidence appears in the bills of exception. From that evidence it appears that the train in question was in charge of a freight conductor and several brakeman, and that whatever was done to Welsh must have been done by a brakeman named Selah. It was also made to appear that it was customary for such conductors and brakemen to exclude from freight trains persons attempting to ride thereon and to expel them from the trains if they had intruded thereon.

All pertinent evidence exhibited in the bills of exception must be considered in reviewing the denial of a motion to nonsuit, for if, when made, there was a failure of proof in some respect and the defect was supplied in the evidence afterwards adduced, the error of the refusal will not lead to a reversal of the judgment. *Delaware, Lackawanna and Western Railroad Co.* v. *Dailey,* 8 *Vroom* 526 ; *May* v. *North Hudson County Railway Co.,* 20 *Id.* 445 ; *Monmouth Park Association* v. *Warren,* 26 *Id.* 598.

In the argument in the trial court and here the contention that the evidence in this case did not justify the inference that the servant of the company had authority to eject Welsh from the train, was deemed to be supported by the authority of our Supreme Court in *Brokaw* v. *New Jersey Railroad and Transportation Co.,* 3 *Vroom* 328. But this involves a misconception of what was decided in that case. The question there considered arose upon a demurrer to a declaration charging a corporation with assault and battery, substantially identical with the declaration contained in the record before us. It was decided that an action for assault and battery would lie against a corporation, and that a demurrer to a charge that a

corporation committed assault and battery by a specified servant, admitted that such servant had competent authority from the corporation.

Questions involving analogous principles have been considered in our courts, and it is now thoroughly settled here as elsewhere that corporations are liable for torts which they may commit by agents, and that the pertinent inquiry when such liability is charged is (1) whether the act in question is one within the scope of the corporate powers, and (2) whether it was done by a person who was the agent of the corporation in doing it.    *McDermott* v. *Evening Journal, &c.,* 14 *Vroom* 488; *S. C.,* 15 *Id.* 430; *Hoboken, &c., Co.,* v. *Kahn,* 30 *Id.* 218; *Dock.* v. *Elizabeth Steam, &c., Co.,* 5 *Id.* 312.

Upon the case presented by the evidence it is obvious that the company had the right to remove from its freight train Welsh, who was a trespasser thereon, which right grew out of its corporate authority to manage and run such trains.    As it could only eject such a trespasser by agents, it could lawfully employ such agents for that purpose.

The company could entrust the ejection of such a trespasser to one or more of its servants by a particular direction in a particular case or by general instructions respecting a class of trespassers.    Authority thus expressly given would charge the company with liability for the act of a servant in ejecting a person not a trespasser, or in using excessive or inappropriate force in removing one who was a trespasser, and this notwithstanding the authority conferred was limited to the removal of trespassers, and the use of any but reasonable and necessary force was prohibited.    The responsibility of the corporation is that of a master, who, under the maxim *respondeat superior,* must answer for injuries done by acts of his servant in the prosecution of his business and within the scope of his employment.    *Driscoll* v. *Carlin,* 21 *Vroom* 28.

Authority which could thus be expressly conferred upon a servant may no doubt be implied to have been conferred from the nature and circumstances of his employment.    The inference of implied authority thus arising, it is obvious that

it is difficult if not impossible to formulate rules upon the
sufficiency of evidence to establish such authority.	In gen-
eral it may be said that when the act which occasioned the
injury for which the master is sought to be charged, is shown
to have been done by the servant in the course and within the
scope of his employment, then the implied authority is in-
ferable. *Aycrigg* v. *New York and Erie Railroad Co.*, 1
*Vroom* 460.	This rule solves most of the questions arising
in such cases.	But when we are required to determine what
evidence will establish implied authority to a servant to make
use of force and violence upon the person of another, a more
difficult question is presented and one not easy of solution.

I have found no more satisfactory statement of the principle
to be applied to the solution of such a question than that
enunciated by Mr. Justice Blackburn in delivering his judg-
ment in *Allen* v. *London and Southwestern Railway Co.*,
*L. R.*, 6 *Q. B.* 65.	In that case the plaintiff had been
arrested at the instance of a booking clerk of the defendant
upon the charge that he had attempted to rob the till at the
defendant's station where that clerk was in charge.	The
charge against plaintiff was heard by a magistrate and dis-
missed.	His action against the defendant company was for
assault and false imprisonment, and the question before the
Queen's Bench was whether the act of the booking clerk was
within an implied authority of the company for which it was
liable.	The principle which the learned justice declared was
this, viz., that implied authority in a servant would be in-
ferred to do all those things that were necessary for the pro-
tection of the property entrusted to him or for fulfilling the
duty which he has to perform.	From that principle applied
to the case he held that the defendant company would have
been liable if the arrest had been made to prevent the plaint-
iff from stealing the money of the company from the till in
charge of the clerk, or to recover from the plaintiff money
actually stolen therefrom.	But he also held, and in this he
was supported by the other judges who heard the case, that
no implied authority from the company was disclosed by the

evidence to take into custody a person who had unsuccessfully attempted to rob the till, as that act was unnecessary for the protection or recovery of the property of the company which the clerk had in charge. *Poulton* v. *London and Southwestern Railway Co.*, L. R., 2 Q. B. 534; *Goff* v. *Great Northern Railway Co.*, 3 El. & E. 672; *Roe* v. *Birkenhead, &c., Co.*, 7 Eng. L. & Eq. 546.

I am prepared to adopt and apply to the present case the principle laid down by Mr. Justice Blackburn. Looking at the evidence we find that the company had entrusted its property, the freight train, to the custody and care of its servants, the conductor and brakemen. Those servants were in charge of the property, conducting it to its destination. It was not a train for passengers who might claim a right to ride upon paying fare. Whoever entered the train to steal a ride was a trespasser whom the company could eject. It was customary for such servants of the company to exclude and eject such trespassers from such trains. This evidence justifies the inference that implied authority was conferred on such servants to eject such a trespasser as Welsh for the protection of the property entrusted to them and for fulfilling the duty to their employer.

This result is, in my judgment, confirmed by a consideration of the liability of Selah, the brakeman, for such an act. Suppose the train had been at a standstill, and that Selah, without unnecessary force had removed Welsh therefrom, I do not think it admits of a doubt that Selah could have justified his act, in a suit against him by Welsh for assault and battery, without proof of any express authority from the company to expel intruders from freight trains, but solely by the authority inferred and implied from his custody of the property and his duty to his employer.

From this it follows that there was no injurious error in the refusal to nonsuit.

The bills of exception show that thereafter the company introduced in evidence its printed instructions to its freight conductors and brakemen respecting their duties. It thereby appeared that a freight conductor was charged with responsi-

bility for the vigilance and conduct of the men employed on the train and was required, among other things, "not to permit unauthorized persons to enter the cars or handle freight or ride upon the train." Brakemen were therein instructed that, when on duty, they were under the direction of the conductor and required, among other things, to assist him in all things necessary for the safe and prompt movement of the train. There was nothing therein giving authority to brakemen in respect to unauthorized persons riding upon such trains, nor was authority in respect thereto interdicted to them, unless that resulted from the express grant of authority to the conductor.

At the close of the case the company did not ask a direction for a verdict but submitted many requests to charge. From them we may fairly discover that the trial judge was asked to submit to the jury the question whether, upon the whole evidence, it appeared that authority to remove trespassers from freight trains had been conferred upon Selah, the brakeman.

The charge of the trial judge assumed that the right of the company to remove such trespassers had been conferred upon and could be exercised by any of the employes on the freight train. It was left to the jury to determine whether Selah's act was done in the exercise of his employment or from a malicious personal motive arising from a bad heart and anger at Welsh, apart and distinct from his duty to his employer.

There was a refusal to charge the requests otherwise than charged, an exception thereto and error has been assigned thereon.

It is now contended that there was error in the refusal to charge the request above specified on the ground that the instructions introduced in evidence, properly construed, gave express authority to freight conductors to exclude from freight trains unauthorized persons riding thereon, and to expel and remove such persons, and that such express authority was exclusive in him on whom it was conferred and implied an interdiction of its exercise by others, and it is argued that the evidence from which, as we have seen, we think an inference

of implied authority in the brakeman could be drawn, was thereby contradicted and overcome by proof that such authority was in fact withheld from such employes.

That the instructions to the freight conductors gave them authority to remove any unauthorized person riding on a freight train seems not capable of doubt, and such was the view taken of such instructions in *Holmes* v. *Wakefield,* 12 *Allen* 580.

But the contention that the express grant of authority to the conductor interdicts the brakeman from the exercise of a similar authority implied from their employment, and so overcomes evidence of such implied authority, is not, in my judgment, to be acceded to.

It is ingeniously argued that the exercise of the power of the company to remove trespassers from its trains is of a delicate and responsible character. The servant to whom such authority is given must determine who are trespassers, and, in expelling trespassers, he must take care to use only such force as is not excessive in degree or inappropriate in kind. Mistakes by the servant in these respects will render his master liable, and for this reason the employer may well desire to commit this nice duty to a competent and proper person.

It must also be conceded that no question of estoppel arises as might be the case upon a contract made with an agent clothed with apparent authority. The question is as to express or implied authority to do an act in respect to Welsh, with whom the company had no contract relation and to whom it owed no duty except to refrain from wilful injury.

Nor is there any question here of the duty arising from the relation of passenger and carrier which this court has lately considered. The distinction between the liability for a breach of that duty and the liability of a master for his servant's acts is pointed out in the able opinion of Mr. Justice Depue, in *Haver* v. *Central Railroad Co., ante p.* 282.

But notwithstanding these considerations, I find myself unable to concede that the authority to remove trespassers from freight trains, which, as we have seen, is implied to

have been conferred on those put in charge of such trains, has been either abrogated or annulled by the instructions which gave express authority to that effect to the freight conductor. If he had acted under that authority, the liability of the company would not have been in any respect diminished by its conditioning its grant of authority upon its being properly exercised. So, when the company committed to the conductor and his crew of brakemen the custody and care of its freight train, and thereby gave implied power to exclude and expel therefrom any unauthorized persons intruding thereon in contravention of the design and purpose of the company in running such a train, I think that the implication is not rebutted by proof that it had selected one of its servants and given him express authority in respect to such trespassers. The express grant is not inconsistent with the implied authority. The illustration heretofore used is again pertinent. Suppose Selah had removed Welsh from the train when it was not in motion and without excessive force, can it be doubted that he could have justified his act, in defence of an action for assault and battery, upon his implied authority to protect his master's property, and that his justification would not be negatived by proof that the company had given express authority to the conductor in respect to trespassers?

The result is that the refusal of the request to charge in the respect complained of was not erroneous. There was no exception to the charge.

There are other assignments of error which have not been argued. As they are directed to rulings of the trial judge in matters committed to his discretion and which are not reviewable on error, they need not be further discussed.

For the reasons given, I shall vote to affirm the judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, LUDLOW, COLLINS, BOGERT, VREDENBURGH.   8.

*For reversal*—DEPUE, LIPPINCOTT, GUMMERE, NIXON, HENDRICKSON, ADAMS.   6.