THOMAS WARD, PLAINTIFF-RESPONDENT, v. ERIE RAIL-
ROAD COMPANY, DEFENDANT-APPELLANT.

Submitted June 6, 1916—Decided November 8, 1916.

1. Where the act of a servant is a willful one, not expressly or impliedly within the line of the servant's duty or employment, entirely disconnected therefrom, done, not as a means, or for the purpose of performing the master's work, the master is not responsible for such act of the servant.

2. The above rule applied in this case, where it appears the defendant's watchman or detective shot the plaintiff as he approached the watchman on defendant's property, without any notice or reason for such shooting. *Held*, it was error not to grant a motion to nonsuit or direct a verdict in favor of the defendant, the master.

---

On appeal from the Hudson County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-
CHARD and BLACK.

For the plaintiff-respondent, *Weller & Lichtenstein*.

For the defendant-appellant, *Collins & Corbin*.

The opinion of the court was delivered by

BLACK, J. The plaintiff, Thomas Ward, sued Matthew Cannon and the Erie Railroad Company to recover damages for personal injuries done to him, resulting from an assault and battery, by a gunshot in the groin, on Saturday afternoon, August 15th, 1914, about four-thirty. The trial resulted in a verdict against both defendants. The Erie Railroad Company only appeals. The only errors alleged are the refusals of the trial judge to grant the motions to nonsuit and to direct a verdict in favor of the defendant; upon the refusal of the trial judge to nonsuit, the defendant rested without offering further testimony and moved for a direction of a verdict, on the same grounds urged on the motion for a nonsuit.

The only point involved in the case is whether Cannon, when he fired the shot at the plaintiff, was acting within the scope of his employment, as a detective, servant or agent of the defendant company? Our examination of the record leads us to the conclusion that he was not such servant or agent; that it was error for the trial court not to have granted the motions to nonsuit the plaintiff and to direct a verdict in favor of the defendant. The plaintiff's version of the occurrence, in substance, is as follows: That, on the afternoon of the day of the shooting, the plaintiff was standing under the Park avenue viaduct, or bridge, that crosses the Erie railroad, in Hoboken, near Willow avenue, which is about two hundred and twenty feet or more from the place where the shooting occurred. The shooting occurred on the property of the Erie Railroad Company. This was the beginning of the Erie railroad freight yard at Weehawken. The plaintiff heard several shots and ran over to the railroad track and saw there the defendant Cannon standing over a man by the name of Ferris, whom the plaintiff knew, and when he, Ward, the plaintiff, got within three or four feet of Cannon, Cannon fired a shot

at plaintiff. Nothing was said before the shot was fired, and nothing was said after the shooting. The plaintiff then went home. Ward did not know Cannon, or that he was working for the Erie Railroad Company. When he first saw Cannon he was standing over Ferris and had a gun in his hand. Ferris was lying on the ground; neither Cannon nor Ferris was doing anything, the one was standing and the other lying on the ground; the plaintiff saw this, when he was from two hundred to fifty feet away, he states both distances. He continued to walk toward Cannon and Ferris. He was facing them and going straight toward them. He could see everything. He was on the railroad property. No train obstructed his view. There is no contention that Cannon was not an employe of the Erie Railroad Company; just previous to the shooting, Cannon and Glaser, another railroad watchman, had driven Ferris and one Reilly off a loaded coal train. None of the plaintiff's witnesses testified that they saw Cannon fire the shot; on the contrary, they said they did not. The plaintiff is therefore limited to his own version of how the affair happened. The plaintiff's insistence is that whether the shooting by Cannon was within the scope of his employment was a question of fact for the jury, citing in the brief in support of that position the following cases: *Carey* v. *Hamburg American Packet Co.,* 72 *N. J. L.* 56; *Bernadsky* v. *Erie Railroad Co.,* 76 *Id.* 580; *Dierkes* v. *Hauxhurst Company,* 80 *Id.* 369; *Magar* v. *Hammond,* 183 *N. Y.* 387. In the case of *Carey* v. *Hamburg American Packet Co., supra,* this court held there was sufficient evidence to justify a jury in finding that the men who assaulted the plaintiff were in the defendant's employ, and that when the assault was committed, they were acting within the scope of their employment. So, in the case of *Bernadsky* v. *Erie Railroad Co., supra,* the court held that the jury could properly find, from the testimony of the plaintiff and of the defendant Burns, that the plaintiff was a trespasser in the yards of the defendant company, at Weehawken; that Burns, in the discharge of his duty as watchman, undertook to drive the plaintiff off; that in doing so, he committed the assault sued for, and that

this abuse of the plaintiff was unnecessary and excessive. So, the Court of Errors and Appeals, in the case of *Dierkes* v. *Hauxhurst Land Co., supra,* held, in cases where the scope of authority of a servant or agent depends upon disputed matters of fact, the extent of such authority is ordinarily a question for the jury. So, in the case cited from the New York Court of Appeals, *Magar* v. *Hammond, supra.*

There is no dispute, however, about the facts in the case under consideration. They all come from the plaintiff himself, and for the purposes of the motions for nonsuit, the direction of a verdict, and on this appeal the plaintiff's testimony must be taken, not only as true, but with every fair and legitimate inference that can be drawn from the facts as testified by the plaintiff.

But we think this case is controlled by the case of *Holler* v. *Ross,* 68 *N. J. L.* 324, in the Court of Errors and Appeals, which is an illustrative case, and one of many in the books. That case holds where it appears when the plaintiff rests that the act of the servant was a willful one, and was not expressly or impliedly within the line of the servant's duty or employment, there should be a nonsuit. That case was cited, subsequently, with approval by the same court, in the case of *Evers* v. *Krouse,* 70 *Id.* 653, holding that an act done by a servant while engaged in the work of his master, but entirely disconnected therefrom, done, not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent, malicious or mischievous purpose of the servant, is not in any sense the act of the master. The rule will be found stated, in nearly the same language, with a collection of many cases in 26 *Cyc.* 1528. See, also, *Tier* v. *Miller,* 80 *N. J. L.* 691.

This case is differentiated from the class of cases cited by the plaintiff, which hold that the master is liable for a willful injury inflicted on a trespasser where authority is given by a master to his servant to eject trespassers from the premises of the former, such as *Letts* v. *Hoboken Railroad Co.,* 70 *N. J. L.* 358; *Bernadsky* v. *Erie Railroad Co., supra; New Ellerslie Fishing Co.* v. *Stewart,* 123 *Ky.* 8; 9 *L. R. A.*

(*N. S.*) 475. That class of cases is based somewhat upon the idea that the law under the circumstances will not undertake to say when in the course of the assault the servant ceased to act upon his own responsibility. But those cases have no application to the facts of this case, for in this case there was no attempt made to eject the plaintiff from the company's property. The doctrine of those cases only applies when a person is attempting to eject a trespasser and uses more force than is necessary. The most favorable view that can be taken of the plaintiff's case is that Cannon is guilty of an assault and battery on Ward, the plaintiff; that an employe of the defendant company, while on its property, but doing nothing in its interest, either by authorization or implication, shot the plaintiff. The motion to nonsuit the plaintiff and direct a verdict for the defendant company should have been granted by the trial court. It was reversible error to deny these motions. Hence, the judgment against the Erie Railroad Company is therefore reversed, to the end that a *venire de novo* may issue.