## THE H. S. INC. NO. 72.

### Petition of HENRY STEERS, Inc.

### No. A. 8658.

District Court, D. New Jersey.
July 11, 1941.

Samuel F. Shatz, of Newark, N. J., for claimant John Cifrondello.

Collins & Corbin and Charles Broadhurst, all of Jersey City, N..J., for libelant.

WALKER, District Judge.

The facts are:[1]

1. Henry Steers, Incorporated, was and still is a corporation organized and existing under the laws of the State of New York, and was the owner of a deck scow known and designated in the proceedings as "H. S. Inc. No. 72". The deck scow "H. S. Inc. No. 72" was built of wood. Its length was 112.4', its width or beam 32.4', and its depth of hold 9'. It was used for the transportation of sand, gravel, stone, or other supplies of like character on the deck thereof.

2. On and prior to August 7, 1936, one Hugo Wuori was employed by Henry Steers, Incorporated, as a scow captain on said "H. S. Inc. No. 72" and was the only employee on said scow and in sole charge of said scow.

3. On August 7, 1936, the said "H. S. Inc. No. 72" was moored on the west side of the Passaic River at or near the foot of Coal Street, in Newark, Essex County, New Jersey, just north of the Pennsylvania Railroad Company's new terminal. It was moored parallel with the bulkhead on the west bank of the river and was the most easterly of three deck scows similarly moored at said point. It was in the navigable waters of the United States loaded with sand and gravel and in charge of Hugo Wuori.[2]

4. Early in the afternoon of August 7, 1936, Vito Cifrondello, the deceased, a young man of 15½ years, went to the west bank of the Passaic River at or near the foot of Coal Street, Newark, New Jersey, with Angelo Agrifolio, Frederick Anderson and Salvatore Morrillo. After undressing themselves on a pile of logs, they went swimming in the river and while they were doing so, a man (name unknown) on the center scow called to them asking who had put dirt on scow No. 72. One or several of the aforesaid swimmers denied the act and suggested they would clean it off if given permission to dive from the barge. Later all four swam to "H. S. Inc. 72", where partly submerged they held onto the upstream end, Angelo near the midstream side, Anderson to his right, Morrillo was to the left of Anderson and to his right was Vito, who was further out of the water than any of the others. Vito was holding onto a black rubber tire which served. as a bumper, when suddenly Hugo Wuori came out of his cabin, which was located at the upstream end of the scow and near where the boys were. He was using profanity and swinging a rubber hose measuring 22 inches in length with a diameter of approximately 1⅛ inches, in which a wooden plug had been inserted at each end to hold therein gravel or shot which gave it weight; Hugo Wuori swung in the direction of several of the boys, who dropped back into the water and pushed away from the barge. He then saw Vito, who was still hanging on, and he struck him several times with the hose despite his cries that he could not swim very well. Vito then fell back into the water and his body was not recovered

---

[1] Rule 52, Rules of Civil Procedure for District Court of the United States, 28 U.S.C.A. following Section 723c.

[2] Facts No. 1, 2 and 3 taken from stipulation of facts filed by the proctors of record.

from the river until several hours thereafter.

5. Hugo Wuori willfully, deliberately and with utter disregard for the consequences struck out with the rubber hose hitting Vito Cifrondello, who as a proximate result thereof drowned.

### Discussion.

Hugo Wuori testified during the trial that on the day in question he left his scow, went to the pay-shed of Henry Steers, Inc., and after receiving his money, he went with another man to a restaurant in Newark. On his return to the scow about 3 P. M., and while crossing both the scow nearest the river bank and scow No. 76, the center one of the three scows moored at or near the foot of Coal Street, Newark, New Jersey, Miller, the captain thereof, told him that a mess had been made on the deck of his scow by the boys, that he then went aboard his scow and into the cabin where he lay down. Later, on hearing Miller call out that the boys were returning, he jumped up, took a rubber hose from his closet[3] and went out the door, seeing the heads and hands of 3-4 boys, he swung the hose at the boys, who pushed away from the scow. Then he looked to his left and at or near the corner and in the water he saw the head and hands of a boy, who was swimming but not making any headway, that he went to the corner and with the hose in his hand, called to the boy: "Come here! Come here!" That he held the hose in the direction of the boy, who tried to get hold of it unsuccessfully, and the last time he saw the boy he was between scow No. 72 and 76.

The court does not believe the story told by Hugo Wuori, it does believe the boys in the company of Vito, and it finds Hugo Wuori willfully, deliberately and with utter disregard for the consequences struck out with the rubber hose, hitting Vito, who drowned as a proximate result thereof.

One of the duties of Hugo Wuori, the captain of "H. S. Inc. No. 72" was to see that the goods transported on his boat reached their destination safely and in the condition and amount in which they were sent. There is nothing in the evidence to show that the boys, who were swimming around the scow had damaged or were damaging it or interfering with its cargo. Assuming that someone had put dirt on the scow, it does not seem to this court that same damaged the scow, all that can be said is, it served to inflame the mind of Hugo Wuori to the point where he acted in a manner which rates only severe condemnation. It is true the duties of a scow captain not only impliedly but in fact embrace protecting and safeguarding the property of his master, but they do not include either expressly or impliedly a wanton assault on boys hanging onto the scow. It can be argued that they were trespassers, but even so, Hugo Wuori could use only reasonable and necessary force to remove them from the property of his master. If we were to find that he commenced to remove the boys from the boat as trespassers and then in doing so he went beyond his duties as a watchman and committed an assault, the master would be liable,[4] but Hugo Wuori commenced his attack on the deceased youth in a manner which clearly demonstrates an independent malicious purpose and from the very beginning it was outside the scope of his employment and distinguishable from those acts which render a master liable, even though they are not necessary for the proper performance of a servant's duty to his master or are even contrary to his master's orders.[5]

The brutal act of Hugo Wuori was unconnected with that phase of his work which was to protect the barge and act as watchman of it. He acted from personal feelings of anger and resentment and not from a feeling of furthering his master's business. The law on this question has long been settled in New Jersey,[6] and is to the effect that where the act of the servant is willfully done the master is only liable if the deed was done for the purpose of per-

---

[3] Exhibit C-10.

[4] West Jersey & S. R. Co. v. Welsh, Err. & App., 62 N.J.L. 655, 42 A. 736, 72 Am.St.Rep. 659; Letts v. Hoboken R. Co., 70 N.J.L. 358, 57 A. 392; Bernadsky v. Erie R. Co., Err. & App., 76 N.J.L. 580, 70 A. 189; Delaware, L. & W. R. Co. v. Pittinger, 3 Cir., 293 F. 853.

[5] Klitch v. Betts, Err. & App., 89 N.J.L. 348, 98 A. 427.

[6] Holler v. Ross, Err. & App., 68 N.J. L. 324, 53 A. 472, 59 L.R.A. 943, 96 Am.St.Rep. 546; Evers v. Krouse, Err. & App., 70 N.J.L. 653, 58 A. 181, 66 L.R.A. 592; Ward v. Erie R. Co., 89 N.J.L. 525, 100 A. 1029; Casale v. Director General of Railroads, 94 N.J.L. 398, 110 A. 707. See also Carey v. Hamburg American Packet Co., 72 N.J. L. 56, 60 A. 179.

forming the master's work or came expressly or impliedly within the servant's duties. The rule is clearly set forth in The Restatement of Law: "The master, however, is relieved from liability under the rule stated in this Section if the servant has no intent to act on his master's behalf, although the events from which the tortious act follows arise while the servant is acting in his employment and although the servant becomes angry because of them."[7]

### Conclusions of Law.

The act of Hugo Wuori in striking Vito Cifrondello, the deceased, was the result of an inflamed mind and demonstrates an independent malicious purpose not intended to be on his master's behalf, and consequently his master is not liable. The claim filed herein by and on behalf of John Cifrondello, administrator ad prosequendum and general administrator of the estate of Vito Cifrondello, deceased, is disallowed and excluded.

---

[7] Restatement of Law, Agency, Chap. 7, Sec. 245, Comment d., p. 550.