THE ATLANTIC COAST LINE RAILROAD COMPANY, A COR-
PORATION, PLAINTIFF IN ERROR, v. ANNIE A. MILLER,
DEFENDANT IN ERROR.

DAMAGES FOR DEATH BY WRONGFUL ACT—NEGLIGENCE
IN OPERATION OF TRAINS—RECONCILING CONFLICTS
IN EVIDENCE.

1. The engineer in charge of. a railroad locomotive has the
right to presume that an adult person, whom he sees
upon or beside the track ahead of his approaching engine,
is in possession of his faculties, and that he will obey
the instinctive law of self-preservation by getting off the
track, if already on it, or that he will not get on it if
already off; and in such cases it is not negligence on the
engineer's part if he fails to attempt to stop his engine,
unless he knows the party, and knows that he labors
under some disability that prevents him from being
aware of his danger, or that prevents his getting or keep-
ing out of the way, unless he sees evidence of such disa-
bility from the party's actions or appearance, or unless
he sees that such party can not or will not get or keep
out of the way.

2. It is the duty of a trial jury to reconcile, if possible, seem-
ing conflicts in the evidence without convicting either of
the conflicting witnesses of intentional and deliberate
false swearing.

3. In a suit brought by the wife for damages against a rail-
road company for the death of her husband alleged to
have been produced by the negligent operation of the
defendant's engine and train, if the uncontradicted evi-
dence affirmatively shows that the defendant was not
guilty of any negligence that contributed to the produc-
tion of the injury, but shows that the deceased brought
the accident upon himself solely by his own carelessness
in driving with a horse and buggy to and upon the

defendant's railway track immediately in front of a rapidly approaching trains of cars, of whose presence he must, from the proofs, have known, that was too close upon him when he first drove upon the tracks to have been stopped by any known human agency before coming in collision with him, the plaintiff is not in law entitled to any recovery, and in such a case the trial court should so instruct the jury.

This case was decided by Division B.

Writ of error to the Circuit Court for Putnam County.

The facts in the case are stated in the opinion of the court.

*R. A. Burford* and *J. N. Blackwell,* for Plaintiff in Error.

*Alex. St. Clair-Abrams,* for Defendant in Error.

TAYLOR, J.: The defendant in error, as plaintiff below, sued the plaintiff in error, as defendant below, in the circuit court of Putnam county, in an action for damages for the death of her husband, Simon J. Miller, alleged to have been brought about by the negligence and carelessness of the defendant railroad company in the operation of its trains.

The first count of the declaration alleges that on the 17th day of January, 1906, a train of cars of the defendant company was running towards a public crossing of the defendant's road at a high rate of speed and without giving any signal or warning of its approach, and while the buggy in which the said Simon J. Miller was sitting was on the crossing the said locomotive and train of cars

negligently ran to and on said crossing, striking the buggy in which the said Simon J. Miller was sitting and hurling the said buggy and the said Simon J. Miller off of said crossing and dashing the said Simon J. Miller to the ground, inflicting upon him fatal injuries, from which injuries the said Miller then and there died, and that the defendant, through its employes, carelessly and negligently failed to give any signal either by sounding the whistle or ringing the bells so as to advise and warn the said Miller that said locomotive and train of cars attached was about to cross the said public highway or crossing, and that by reason of such carelessness of the defendant in failing to give and signal or warning the said locomotive came into collision with the said buggy, and caused the death of the said Simon J. Miller.

The second count charges the negligence of the defendant to consist in a failure to keep a lookout ahead of said crossing, and that by reason of such negligence the said defendant failed to stop its said locomotive and train of cars in time to avoid the collision with and injury to said Simon J. Miller.

The third count of the declaration alleges that it was the duty of the defendant to have its locomotive and train of cars under such control when approaching such crossing as to be able to stop the same at said crossing and to avoid collision with persons or vehicles on said crossing, but the defendant carelessly and negligently ran said locomotive and train of cars to and upon said public crossing at a high rate of speed, and without having said locomotive and train of cars under proper control; that as said locomotive or locomotives and train of cars were approaching said crossing the buggy in yhich said Simon J. Miller was sitting was on the crossing and was in full

view of the engineer and other employees on defendant's said locomotive or locomotives for a distance of more than seventy-five yards, but said locomotive or locomotives, being run at a high rate of speed and not being under proper control, said locomotive or locomotives was, or were, carelessly and negligently run to and on said crossing, striking the buggy in which said Simon J. Miller was sitting.

The cause went to trial on the declaration and pleas, and resulted in a verdict and judgment in favor of the plaintiff in the sum of $6,500, and this judgment the defendant below brings here for review by writ of error. Various errors are assigned, but the conclusion we have reached upon a careful consideration of all the evidence in the cause renders it unnecessary to consider and of such assignments except one, *viz.*, the denial of the defendant's motion for a new trial upon the ground thereof that the verdict is contrary to the evidence and is not supported thereby. There is no material conflict in the evidence, and the following case in substance is made thereby: The village or hamlet called Frances, where the accident occurred, is a small flag station on the defendant's road, unincorporated, with a few families scattered around. The spot where the accident happened is at a point where a public wagon road crosses the defendant's railway track. At this point, in the direction from which the train was approaching on that day the railroad track is laid down in a perfectly straight line, with nothing to obstruct the view of a person on the public highway at the crossing for more than five hundred yards in the direction from which this train was approaching. Several hundred feet from the crossing the whistle on the engine was sounded and the bells were rung at or near the signal post, and it was

early in the morning, when sound is conveyed more easily and perfectly and when anyone about there could and did hear not only the whistle sounded, but the rumbling noise of the approaching train, for some time before it reached the crossing. The uncontradicted evidence of the engineer and fireman in charge of the engine drawing the approaching train is that they all kept a careful lookout ahead of the engine, and that they did not see the deceased approaching the railroad until they got up to within less than seventy-five yards of the crossing, when they saw the deceased drive his horse and buggy upon the railroad track, when it was too late to stop said engine, although they put on the emergency air-brakes, that were in perfect order and condition, and reversed the engines. That it was impossible, within the short distance they were away from the crossing when the deceased drove on the track, to have stopped said engine in time to have avoided the collision. They were running at their accustomed speed of from twenty to twenty-five miles an hour, which was not a negligent rate of speed in a rural district such as they were traversing.

The only apparent conflict in the evidence for the plaintiff and that for the defendant touching the operation of the train of cars of the defendant that produced the inury is in the evidence of the plaintiff's witness, one Roy Henderson a lad of fourteen years of age, and that of the engineers and firemen on and in charge of the two locomotives drawing the train. The train had two locomotives drawing it, both of them manned by an engieer and fireman, both locomotives being in front of the cars composing the train. The lad Roy Henderson, for the plaintiff, testified that he lived near the crossing where the accident happened, and that the train came to a stop after the acci-

dent, near to where his home was, and that he went out and examined the engines, and that the front engine had an engineer and fireman on it when it stopped near his house, but that it had no steam or fire in it. That he did not get up in or on the engine to make his examination, but by just looking at it from the ground where he stood saw that it had no steam or fire in it, but that the second engine immediately in the rear of the front one did have steam and fire in it, and an engineer and fireman also. Both engineers and firemen testified for the defense that the front locomotive did have steam and fire in it, but that it had some defective part on one side, and was, consequently, being worked only on one side. That every locomotive has two engines, one on one side, the other on the opposite side. That some part of one of the engines on the front locomotive being out of order, the steam was not turned on in such defective engine, but was turned on and was working properly in the other engine on the other side, and that the only difference that it made with the locomotive was to decrease its drawing power, but made no difference whatever in the power of such locomotive to stop itself or to be brought to a stop when in motion. They testified further, without contradiction, that if the front locomotive had in fact no steam in it at all, on the occasion of the accident, as testified by the lad Roy Henderson, that it would have had a tendency to bring the train to a stop quicker than if it did have steam on it. The duty of a jury and of courts is to reconcile, if they reasonably can, seeming conflicts in evidence, without convicting the witnesses of deliberate false swearing. The seeming conflict between the testimony of this fourteen-year-old lad and that of the several engineers and firemen of the defendant is capable of easy and reasonable reconciliation without

convicting either of deliberate or intentional falsehood. The boy, from his whole testimony, shows that he made the most cursory examination of the front locomotive; he did not say that he examined it all round or on both sides. He probably saw, and in fact the testimony shows that he saw, the side upon which no steam was turned, and therefore came to the honest conclusion that the entire locomotive had no steam in it, and so testified. But besides this, the plaintiff's declaration did not allege the failure of the defendant to have fire and steam on its front locomotive as a contributive cause of the injury, neither was there any proof to show that such failure, if it existed in fact, contributed in any manner to the bringing about of the injury, but on the contrary, the uncontradicted evidence for the defense was that, if such had been in fact the condition of the front locomotive, instead of contributing to the injury, its tendency would have been to have prevented it.

The third count of the declaration is framed upon the theory that the deceased was *upon the crossing*, where the defendant's servants upon its approaching engines could have seen him, and when said engines were a sufficient distance away to have been stopped before coming in collision with him on the crossing, had it not been for their carelessness and negligence in running the train to ad upon said crossing at a carelessly high rate of speed. The proofs do not sustain this theory of the case, but on the contrary show that the deceased was not upon the crossing at the time when the engineer in charge of the train could have seen him a sufficient distance ahead of his engine to have brought it to a stop before reaching the crossing, but that he drove his horse and buggy to and upon the crossing when the defendant's rapidly approach-

ing train, of whose presence and rapid approach he must have known, was not exceeding, according to the proofs, forty-five yards from said crossing.

In Florida Cen. & Penn. R. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558, this court has announced the rule obtaining universally, that: "The engineer in charge of a railroad locomotive has the right to presume that an adult person whom he sees upon or beside the track ahead of his approaching engine is in possession of his faculties, and that he will obey the instinctive law of self-preservation by getting off the track, if already on it, or that he will not get on it if already off; and in such cases it would not be negligence on the engineer's part if he failed to attempt to stop his engine, unless he knew the party, and knew that he labored under some disability that prevented him from knowing of his danger, or that would prevent his getting or keeping out of the way, or unless he sees evidences of such disability from the party's actions or appearance, or that he cannot or will not get or keep out of the way." Under this rule, even if the engineer in charge of defendant's train had seen the deceased approaching the crossing and before he reached it, he would have had the right to presume that he would not drive upon the railroad track in such dangerous proximity to a rapidly approaching train, and was under no obligation to stop his train, or even to slow it down, but the defendant company is not driven, in this case, to the shield even of this rule, for the case made by the proofs is that the engineer did not see the deceased, and could not have seen him, until he actually drove his horse and buggy upon the defendant's right of way and track, when it was too late to avoid the collision, even though every exertion was made with the utmost promptness to avoid it.

Under our statute the defendant railroad company is liable for all injury to persons and property caused by the running of its engines and cars, unless the company shall show that it has used all ordinary care and diligence upon the occasion to avoid or prevent the injury. There was no carelessness or negligence on the part of the defendant shown or proven by the plaintiff that contributed to the bringing about of the injury, and the unshaken and uncontradicted evidence for the defense affirmatively showed that no such negligence was attributable to the defendant, but that the deceased brought down the shocking accident upon himself solely by his careless driving upon the defendant's railway track immediately in front of a rapidly approaching train, of whose presence he must have known, that was too close upon him when he first got upon the track to be stopped by any known human agency without coming in violent collision with him. Under these circumstances, the plaintiff below was not entitled in law to any recovery whatsoever, and such verdict was not supported by the law or by the evidence, and at the close of the evidence the court, upon the facts as proven should have directed a verdict for the defendant.

The judgment of the circuit court in said cause is hereby reversed and a new trial awarded, at the cost of the defendant in error.

HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.