FREEMAN v. A. H. BULL S. S. CO.

THE ELLENOR.
No. 10092.

Circuit Court of Appeals, Fifth Circuit.
Feb. 6, 1942.

Hilton S. Hampton, of Tampa, Fla., for appellant.

Cody Fowler and William A. Gillen, both of Tampa, Fla., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

Willie Mae Freeman, as widow of William Freeman, filed in admiralty her libel in rem against the Steamship Ellenor, to recover damages for the negligent killing of William Freeman on the ship. The ship was claimed by the owner, who defended it. Evidence was heard. The ship was found not guilty and the libel was dismissed. Libellant appeals.

The Ellenor was chartered by Ashcraft-Wilkinson Company to carry a part cargo of castor pomace in bags from Edgewater, New Jersey, to Tampa, Florida; cargo to be loaded, trimmed and discharged by charterers, with free use of the vessel's gins, falls, tackles and winches, with power necessary to operate them. The charterers employed stevedores to load the cargo; and after the voyage of six days and arrival at Tampa, the vessel notified Block's Terminal, Inc., stevedore at Tampa, likewise employed by charterers, that it was ready to discharge cargo. Thereupon the stevedore's employees, including the deceased, came upon the ship under the direction of their foreman, and not under the supervision of the vessel's officers or crew, and proceeded to unload the cargo from the four hatches. Hatch No. 2 was uncovered and opened, and Freeman and another longshoreman at once descended into it, but encountered a stench, and were overcome in the hold. Freeman's companion was gotten out and revived, but Freeman, remaining longer, could not be revived and died. Tests of the air in the hold made soon after showed carbon dioxide gas present in unusual quantity, though not enough to cause death. But the most probable

cause of Freeman's death, as found by the court, is that some of the cargo was decaying, giving off the gas, which being heavier than air had settled at the bottom of the hold, and before being stirred up and mixed with the air above was strong enough to suffocate him. While opening the hatch the stevedore's foreman noticed that a ventilator nearby was also closed and covered with a tarpaulin, which he said was usual during a voyage to prevent the entrance of water. It was opened and put in operation after Freeman's death. Every witness for each side testified that castor pomace, which is the castor bean substance left after the oil is extracted, and is used as a fertilizer ingredient, was a commonly handled cargo at Tampa, and that no one had ever before been affected by any gas generated from it; that it was not considered dangerous to handle, and that no precautions were ever taken to ascertain if there were gases present from it. Freeman himself had assisted in unloading between twenty and thirty shiploads of it. No fault or defect in the ship or her appliances appears. Libellant's chief contention is that Freeman ought not to have been sent into the hold unless it was known to be safe, and that the keeping the hatch cover off for awhile, or operating the ventilator, would have made it safe.

■ It will be noted that the vessel was under charter, and had no control over the loading and unloading or knowledge of the condition of the cargo. Freeman was not an employee of the vessel, but of Block's Terminal, Inc., which in turn was employed by Ashcraft-Wilkinson Company. Authorities cited on the undelegable duty of a master to furnish his servant a safe place to work have no application to this vessel. If she was herself in safe condition and her appliances good, and warning given of any hidden danger known to her, her duty was fulfilled to the charterer and his employees when they came aboard to get his cargo. The fault here was not in the vessel, but in the cargo. If it was liable to spoil and become noxious, so that the hatch should be removed and the ventilator used before entering the hold, that was the responsibility of the charterer and stevedores. The vessel did not cause the danger, nor is anyone connected with her shown to have known of it. There may be liability on the part of Freeman's master, and there would appear to be a remedy available under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., but we see no ground on which this vessel may be held liable in rem. We treat the belated amendment touching the failure to ventilate as allowed, though no issue of that sort was really investigated in the trial. We hold that ventilation prior to unloading was not a duty of the vessel. See Luckenbach S. S. Co. v. Buzynski, 5 Cir., 19 F.2d 871; Willis v. Lykes Bros. S. S. Co., 5 Cir., 23 F.2d 488; The Beechdene, D.C., 121 F. 593; The Auchenarden, D.C., 100 F. 895.

■ Chapter 6521, Florida Laws of 1913, now Sections 7058–7063, Compiled General Laws, affords libelant no support. The right of action for death which it gives is in personam only, and exists only for the death of the agents and employees of the defendant. The suit here is not in personam, nor was Freeman an agent or employee of the defendant. The statute found in Section 7047 of Compiled General Laws does cover libels in rem against a vessel, preserving them from defeat by the death of the person injured, and it may have application in an admiralty court; but it does not create an in rem right where the deceased had none before death, and is expressly limited to cases of death by wrongful act or negligence. Assuming the widow's right to sue under this statute, she makes no case of any default of the ship of which Freeman could have complained.

Judgment affirmed.