GRAHAM v. A. LUSI, Limited.

THE NOVARCHOS KOUNDOURIOTIS.

No. 14147.

United States Court of Appeals
Fifth Circuit.

June 30, 1953.

224

Chester Bedell, Jack F. Wayman and W. A. Cleveland, Jr., Jacksonville, Fla., for appellant.

Harold B. Wahl and Scott M. Loftin, Jacksonville, Fla., for appellee.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

BORAH, Circuit Judge.

Reta Belle Graham, as widow of Howard Graham, filed in admiralty her libel in rem against the Steamship Novarchos Koundouriotis, to recover damages for the wrongful killing of her longshoreman husband on the ship. The vessel was claimed by the owner, A. Lusi, Limited, who defended it. After first disposing of some preliminary matters a trial was had on the merits, following which the court made full and definite findings of fact and conclusions of law. Specifically the court found that the cause of the accident was the negligence of the stevedore crew, including the deceased hatch tender who was directing the winches. It also found that if there had been any negligence on the part of the vessel, which there was not, the action was barred by the decedent's own contributory negligence. Having so found, the libel was dismissed, and the libellant has appealed.

The Novarchos Koundouriotis was chartered by the Strachan Shipping Company to carry a part cargo of steel bars to Jacksonville, Florida; cargo to be discharged by charterer with the use of the vessel's gins, falls, tackles, and winches, with power necessary to operate them. After a voyage from the immediate prior port of Savannah, Georgia, the vessel arrived at Jacksonville and notified the charterer that it was ready to discharge cargo. Thereupon the charterer's employees, including the deceased, came aboard the ship under the direction of their foreman, and not under the supervision of the vessel's officers or crew, and proceeded to rig the booms in proper position over the holds to work cargo. Graham in the performance of his duties as a hatch tender was in charge of the booms at No. 2 hatch. When they were adjusted to his satisfaction unloading began and he took his station at the hatch coaming observing the activities in the hold and directing the winchmen when a load was to be raised. In the course of lifting a load of steel with the starboard cargo boom a defectively welded link in the span chain supporting the weight of the boom and cargo parted and the boom fell, striking the intestate and causing his instant death.

This suit was brought under the Florida Death by Wrongful Act Statute, section 768.01, F.S.A., which gives to the widow the right to sue in rem for death occasioned by the wrongful act, negligence, carelessness or default of any ship, vessel or boat or person employed thereon. Taking the position that unseaworthiness is a wrongful act, neglect or default under the Florida statute, libellant alleged that the death of her husband resulted proximately from the unseaworthiness of the vessel and from the negligence of the vessel's owner and operator in providing unsafe equipment. On exceptions to the libel and to the defenses raised in the pleadings, the District Court held[1] that unseaworthiness alone, without negligence, would not afford libellant a right of action; that due care on the part of the owner and contributory negligence on the part of the decedent would constitute complete defenses to libellant's action for wrongful death; and that the libellant would be limited on the

1. Graham v. The Novarchos Koundouriotis, D.C., 99 F.Supp. 450.

trial to her asserted cause of action based on negligence. At the conclusion of the trial which ensued, the court further held that the defect in the chain was a latent one not discoverable by reasonable care and inspection and that the respondent was not negligent in failing to discover the defect but did all that a reasonably careful and prudent owner could have been expected to do under the circumstances. Further, that the cause of the accident was the putting of great and unnecessary strain on the lifting gear, causing the chain to break, and that deceased contributed thereto since he was in charge of the winchmen. The question here is whether there is substantial support in the evidence for the Trial Judge's findings and whether his legal conclusions were properly applied to the facts that he found.

■ We are in no doubt that appellant's right of action under section 768.01, F.S.A., like other rights of action arising in admiralty under Lord Campbell's act and similar acts, is to be enforced according to the principles of the common law and contributory negligence and the exercise of due care are absolute defenses thereunder. Without this statute, the appellant could not maintain her libel because the prior maritime law conferred no right upon the personal representatives of a deceased maritime employee to recover indemnity for his death. Cf. Lindgren v. United States, 281 U.S. 38, 47, 50 S.Ct. 207, 211, 74 L.Ed. 686. The statute must be applied in admiralty just as if the suit had been brought in the state courts, and any defenses which are open to the appellee under the jurisprudence of the state, if successfully maintained, will bar recovery under the libel. The Corsair, 145 U.S. 335, 12 S.Ct. 949, 36 L.Ed. 727; The Alaska, 130 U.S. 201, 9 S.Ct. 461, 32

L.Ed. 923; The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; United States v. Waterman Steamship Corporation, 5 Cir., 190 F.2d 499; Mejia v. United States, 5 Cir., 152 F.2d 686; The Ellenor, D.C., 39 F.Supp. 576, affirmed 5 Cir., 125 F.2d 774; Warnken v. Moody, 5 Cir., 22 F.2d 960; Truelson v. Whitney & Bodden Shipping Co., 5 Cir., 10 F.2d 412; Mooney v. Carter, 5 Cir., 152 F. 147; Quinette v. Bisso, 5 Cir., 136 F. 825, 5 L.R.A.,N.S., 303. In The Ellenor, supra, it was held that contributory negligence on the part of a longshoreman would preclude a recovery by his widow under section 768.01 and that the owners and master of a vessel sued pursuant to the statute need have guarded only against such dangers as a reasonably prudent person would be reasonably expected to anticipate. Other authorities applying the statute are in accord. Lindsay v. Thomas, 128 Fla. 293, 174 So. 418; Carter v. J. Ray Arnold Lumber Co., 83 Fla. 470, 91 So. 893; Atlantic Coast Line R. Co. v. Miller, 53 Fla. 246, 44 So. 247. There is a complete absence of merit in appellant's attempt to avoid the foregoing defenses by invoking a right of action for unseaworthiness which, being a right of action the deceased might have maintained had he simply been injured and lived, is clearly not preserved by the legislative enactment under which appellant proceeds. Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 221;[2] Epps v. Railway Express Agency, Fla., 40 So.2d 131.

■ This brings us to a consideration of the questions of negligence and contributory negligence. There was substantial evidence to show, and the trial court found, that the lifting gear including the span chain was standard equipment on Liberty

---

2. The cited en banc decision of the Supreme Court of Florida holds in pertinent part that section 768.01 "gives a right of action to certain statutory beneficiaries for the recovery of damages suffered *by them by reason of the death* of the party killed; but it makes no provision for the recovery of the damages suffered *by the injured person by reason of the injury inflicted upon him.* Nor was the death by wrongful act statute ever intended to afford such remedy.

It was not the purpose of the statute to preserve the right of action which the deceased had and might have maintained had he simply been injured and lived; but to create in the expressly enumerated beneficiaries an entirely new cause of action, in an entirely new right, for the recovery of damages suffered by *them,* not the decedent, as a consequence of the wrongful invasion of *their* legal right by the tort-feasor." (Italics by the court).

freighters of the Novarchos Koundouriotis' type and that before the charterer took over the vessel in the year 1950 the gear was carefully surveyed and was found to be acceptable. In December, 1949, the lifting gear had had its annual inspection in Greece. Three weeks before the accident, all of the vessel's lifting gear was again carefully inspected at Liverpool in accordance with British laws and regulations and at that time the span chains and other similar tackle were removed from the vessel and tested by Maritime Stores, Ltd., an experienced inspector of lifting gear. Employees of Maritime Stores, Ltd., testified in great detail as to the careful and thorough inspection they had made in examining every link of the chain and a certificate was issued on the form prescribed by the British Government showing that the chain had been tested and inspected; that no defects were found; that the safe working load was 5½ tons; and that a proof load of 11 tons had been applied. The chain was thereafter reinstalled on board the vessel and during the next three weeks was repeatedly checked and inspected visually by the officers of the vessel. On three separate occasions and at various ports including Jacksonville, the booms were raised aloft prior to turning the lifting gear over to stevedores and the span chains were closely inspected by the ship's officers as they were removed from the chain lockers and raised for this purpose. None of these inspections, and there were others, disclosed any defect in the chain in question. At the port of Jacksonville, the charterer's employees handled the chain in the course of their duties, adjusting its length from time to time under the immediate supervision of the deceased, and no complaint was made of its condition. It follows from this evidence that the defect could not have been discovered by reasonably prudent men, exercising all ordinary and reasonable care and diligence, and that the trial court did not err in concluding that the shipowner was free from fault.

The District Court found as a fact that although the defect was concealed inside the weld, the chain would not have parted had it not been unnecessarily subjected to severe strain by the stevedoring crew, and further, that the deceased was directly responsible for improper handling of the winches which brought about this result. There is substantial evidence to support the findings that the winchmen, whose operations Graham was directing, could not see under the hatch coaming and had to rely for their directions on the deceased; that Graham and his fellow stevedores were working the winches too fast and raising the cargo at an excessive rate of speed under apparent orders to unload the vessel quickly and thus reduce the number of days she would be under hire to the charterer; that in their haste and despite the fact that they had been repeatedly warned by the ship's officers that damage would result, these employees allowed the cargo hook to be frequently and needlessly caught under the coaming of the No. 2 hatch, thereby pulling against a strongly supported part of the vessel's structure. The evidence additionally shows that the weight of the boom and cargo was approximately three tons at the moment of the accident; that the chain was capable of sustaining a weight of five tons even after the separation of the weld; and it had in fact held several times that weight when afterwards tested in its broken condition. That the chain could not have broken without great and unusual strain being put on the lifting gear as a result of improper handling thereof by the deceased and the other members of the stevedore crew; and this was what proximately caused the chain to part and the boom to fall, killing Graham. There is thus substantial support in the evidence to support the Judge's findings. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., such findings should be upheld in all instances where we cannot say that they are clearly erroneous.

The remaining contentions of appellant have been carefully considered but do not merit further discussion. Finding no error, the judgment appealed from is

Affirmed.