130 F.2d 341 (1942)
THE H. S., INC., NO. 72.
PETITION OF HENRY STEERS, Inc.
CIFRONDELLO
v.
HENRY STEERS, Inc.
No. 7946.
Circuit Court of Appeals, Third Circuit.
Argued May 4, 1942.
Decided August 3, 1942.
*342 Louis R. Freund, of Newark, N. J. (Samuel F. Shatz, of Newark, N. J., on the brief), for appellant.
Charles W. Broadhurst, of Jersey City, N. J. (Collins & Corbin and Edward A. Markley, both of Jersey City, N. J., on the brief), for appellee.
Before BIGGS, JONES, and GOODDICH, Circuit Judges.
BIGGS, Circuit Judge.
This is an action brought by John Cifrondello, administrator ad prosequendum of the estate of Vito Cifrondello, to recover damages for his death from Henry Steers, Incorporated. The suit arises out of the following extraordinary circumstances. Henry Steers, Incorporated, was the owner of a deck scow. Hugo Wuori was the captain of this scow. On August 7, 1936 it was moored on the west side of the Passaic River at the foot of Coal Street, in Newark, New Jersey. Vito Cifrondello, who was a little over fifteen years of age, and three other boys went swimming in the river. At or about this time someone defecated on the deck of the scow. Wuori was not on the vessel at this time but returned to it shortly thereafter. Wuori, who had had difficulty with trespassers before, some of whom had attacked him on the scow, had prepared a deadly weapon to protect himself and the scow. This consisted of a two-foot length of rubber garden hose, plugged at each end and packed with fine sand. Vito Cifrondello and his companions after swimming about for a while came to one end of the scow and clung to its bumper. Wuori attacked them with the rubber hose and despite the pleas of Vito and his companions that Vito could not "swim so good" drove him from the scow striking him several times as he did so. As the result of this the boy drowned.
John Cifrondello, as administrator ad prosequendum, brought the suit in the Supreme Court of New Jersey under the New Jersey statute relating to "Death By *343 Wrongful Act", Revised Statutes of New Jersey 2:47-1 to 6, N.J.S.A. 2:47-1 to 6. Steers removed the cause to the District Court on the ground of diversity of citizenship and then filed a petition on the admiralty side of the court for limitation of liability pursuant to the provisions of the Act of June 5, 1936, c. 521, § 1, 49 Stat. 1479, 46 U.S.C.A. § 183. The administrator filed his claim for damages again basing his claim on the New Jersey statute relating to "Death By Wrongful Act". A commissioner reported that the value of the scow and its freight was $1,675.
Both the petitioner and the claimant have stipulated that the sole question for determination on final hearing should be the liability of Steers for the acts of Wuori and agreed that if the petitioner is held liable that the claimant's damages shall be fixed at $1,675. The learned District Judge concluded as a matter of law that "The act of Hugo Wuori in striking Vito Cifrondello * * * was the result of an inflamed mind and demonstrates an independent malicious purpose not intended to be on his master's behalf and consequently his master is not liable." A final decree was entered exonerating Steers from liability and enjoining John Cifrondello from prosecuting any action against it arising out of the death of Vito Cifrondello. This is the decree appealed from.
It is settled law that where death results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, a court of admiralty within the district where the tort occurred will entertain a libel in personam for the damages sustained by those to whom such a right is given. As was stated by Mr. Justice McReynolds in Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 90, 66 L.Ed. 210, "The subject is maritime and local in character and the specified modification of or supplement to the rule applied in admiralty courts when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations", citing Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900. See, also, Spencer Kellogg & Sons, Inc., v. Hicks, 285 U.S. 502, 513, 52 S.Ct. 450, 76 L.Ed. 903; and the decision of this court in Klingseisen v. Costanzo Transportation Co., 101 F.2d 902, 903; Feige v. Hurley, 6 Cir., 89 F.2d 575, 578; Robinson v. Detroit & C. Steam Nav. Co., 6 Cir., 73 F. 883, 894. As was made plain in Klingseisen v. Costanzo Transportation Co., supra, he who seeks to recover in admiralty under a State death statute for a maritime tort may do so only in accordance with the law of the State in which the tort occurred. The law of New Jersey therefore governs the substantive rights of the parties.
That law holds that a master is liable for acts done by his servant in the execution of the master's business, whether the acts of the servant be authorized by express warrant or by implied authority conferred upon the servant by the master. Klitch v. Betts, 89 N.J.L. 348, 98 A. 427; West Jersey & Seashore Railway Co. v. Welsh, 62 N.J.L. 655, 42 A. 736, 72 Am.St. Rep. 659. If the servant ejects a trespasser from the master's premises by the use of unnecessary force, the master is liable for damages. Heenan v. Horre Coal Company, 113 N.J.L. 388, 174 A. 551. Wuori as captain of the scow had the duty to protect and safeguard the scow and to keep trespassers from it. Vito Cifrondello was a trespasser.[1] Wuori in removing Cifrondello from the bumper attached to the scow did so with such unnecessary violence that it resulted in the boy's death. The learned trial judge found this to be the *344 fact.[2] The trial court also found that Wuori acted with an inflamed mind. This is obvious, but the court's conclusion that he acted from an independent, malicious purpose is contrary to the evidence. Acting in the course of his employment Wuori took steps to get rid of a trespasser and the fact that he demonstrated hatred of the victim of his brutal method of expulsion does not make his employer any the less liable. See, also, Letts v. Hoboken R., Warehouse & Steamship Connecting Co., 70 N.J.L. 358, 57 A. 392; Bernadsky v. Erie R. Co., 76 N.J.L. 580, 70 A. 189; Darrah v. Erie R. Co., 114 N.J.L. 132, 176 A. 153.
The decree of the court below is reversed and the cause is remanded, with directions to enter judgment in favor of the appellant in the sum of $1,675.
NOTES
[1] This is clear beyond peradventure of doubt. The learned District Judge found as a fact that "later all four swam to `H. S. Inc. 72' [Wuori's scow] where partly submerged they held onto the upstream end * * * and to his right was Vito, who was further out of the water than any of the others. Vito was holding onto a black rubber tire which served as a bumper * * *." Yet in his discussion the learned District Judge proceeds upon the theory that the boys when "hanging onto the scow" were not trespassers. In this connection the court said: "It can be argued that they were trespassers, but even so, Hugo Wuori could use only reasonable and necessary force to remove them from the property of his master. If we were to find that he commenced to remove the boys from the boat as trespassers and then in doing so he went beyond his duties as a watchman and committed an assault, the master would be liable * * *."
[2] The District Court found that: "Vito was holding onto a black rubber tire which served as a bumper, when suddenly Hugh Wuori came out of his cabin, which was located at the upstream end of the scow and near where the boys were. He was using profanity and swinging a rubber hose measuring 22 inches in length with a diameter of approximately 1 1/8 inches, in which a wooden plug had been inserted at each end to hold therein gravel or shot which gave it weight; Hugo Wuori swung in the direction of several of the boys, who dropped back into the water and pushed away from the barge. He then saw Vito, who was still hanging on, and he struck him several times with the hose despite his cries that he could not swim very well. Vito then fell back into the water and his body was not recovered from the river until several hours thereafter."