## HESS, ADMINISTRATOR, *v.* UNITED STATES.

No. 5.   Argued October 15, 1959.—Decided January 18, 1960.

*Cleveland C. Cory* argued the cause and filed a brief for petitioner.

*Alan S. Rosenthal* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Doub.*

MR. JUSTICE STEWART delivered the opinion of the Court.

This action was brought against the United States under the Federal Tort Claims Act [1] to recover for the death of petitioner's decedent, George W. Graham. Graham was drowned in the Columbia River while in the course of his employment as a carpenter foreman for Larson Construction Company, an independent contractor which had undertaken to perform repairs at Bonneville Dam.   That structure is owned and operated by the United States.

As a preliminary to the job it had contracted to accomplish, Larson decided to send a working party by boat

---

[1] 28 U. S. C. §§ 1346 (b), 2674.

to the foot of the spillway dam to take soundings. Larson told the government inspector of the plan and asked that the operating personnel of the dam be requested to close two additional spillway gates near the point where the soundings were to be taken. This request was complied with. Larson then dispatched a group of employees to the area in a tug-and-barge unit. Graham was a member of this working party. Approaching the dam, the tug and barge veered and struck a pier, staving a hole in the barge. The unit then was carried northwardly in the river towards that part of the dam where the spillway gates were open. There it capsized in the turbulent water. Graham and all but one of his fellow employees were killed. Their deaths occurred on navigable waters within the territorial limits of the State of Oregon.

The theory of the petitioner's complaint was that Graham's death had been proximately caused by the failure of operating personnel of the dam to close a sufficient number of spillway gates near the area where the soundings were to be taken. Liability was asserted under the general wrongful death statute of Oregon,[2] as well as under another statute of that State, the Employers' Liability Law,[3] which also creates a right to recover for death under certain circumstances.

The wrongful death statute permits recovery for death "caused by the wrongful act or omission of another," limits liability to $20,000, and makes the decedent's contributory negligence an absolute bar to recovery.[4] In the

[2] Ore. Rev. Stat. § 30.020.

[3] Ore. Rev. Stat. § 654.305 et seq.

[4] "Action by personal representative for wrongful death. When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the decedent, for the benefit of the surviving spouse and dependents and in case there is no surviving spouse or dependents, then for the benefit of the estate of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived,

limited area where the Employers' Liability Law applies, the road to recovery in a death action is considerably easier. Under that statute a defendant is liable for failure to "use every device, care and precaution which it is practicable to use for the protection and safety of life and limb . . . ." [5] There is no monetary limitation of liability, and the decedent's contributory negligence goes only to mitigate damages. [6]

---

against the wrongdoer for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and damages therein shall not exceed $20,000, which may include a recovery for all reasonable expenses paid or incurred for funeral, burial, doctor, hospital or nursing services for the deceased." Ore. Rev. Stat. § 30.020.

[5] "*Protection and safety of persons in hazardous employment generally.* Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine, or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance [*sic*] and devices." Ore. Rev. Stat. § 654.305.

[6] "*Who may prosecute damage action for death; damages unlimited.* If there is any loss of life by reason of violations of ORS 654.305 to 654.335 by any owner, contractor or subcontractor or any person liable under ORS 654.305 to 654.335, the surviving spouse and children and adopted children of the person so killed and, if none, then his or her lineal heirs and, if none, then the mother or father, as the case may be, shall have a right of action without any limit as to the amount of damages which may be awarded. If none of the persons entitled to maintain such action reside within the state, the executor or administrator of the deceased person may maintain such action for their respective benefits and in the order above named." Ore. Rev. Stat. § 654.325.

"*Contributory negligence.* The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage." Ore. Rev. Stat. § 654.335.

After trial without a jury, the District Court entered judgment for the United States. Since Graham's death had occurred on navigable waters, the court ruled that the case was one for decision under maritime law, which in this case would apply the general wrongful death act of Oregon. Upon the basis of detailed findings of fact the court concluded that there was no liability under that statute because Graham's death was "not caused by the negligence of the United States or its employees." As to the Employers' Liability Law, it was the court's view that "this Act is not applicable for the reason that the Government was not responsible for the work there being performed, and for the further reason that the high standard of care required under the Act, if applied to these cases, would be unconstitutional." 1958 Am. Mar. Cas. 660.

The Court of Appeals affirmed, holding that the trial court had not erred in finding that negligence had not been proved, and agreeing that the Employers' Liability Law "could not be constitutionally applied to this case." The appellate court expressly refrained from deciding "whether the trial court was also correct in ruling that, if that act were applied, the United States would not be liable thereunder because it was not responsible for the work being performed by the decedent." 259 F. 2d 285, 292. Certiorari was granted to consider a seemingly important question of federal law. 359 U. S. 923.

As this case reaches us, the petitioner no longer challenges the finding that the United States was not guilty of such negligence as would make it liable under the wrongful death statute of Oregon. His sole claim here is that he was erroneously deprived of the opportunity to invoke the Employers' Liability Law.

The Federal Tort Claims Act grants the District Courts jurisdiction of civil actions against the United States "for injury or loss of property, or personal injury or death

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346 (b).

Graham's death and the wrongful act or omission which allegedly caused it occurred within the State of Oregon, and liability must therefore be determined in accordance with the law of that place. Since death occurred on navigable waters, the controversy is, as the trial court correctly held, within the reach of admiralty jurisdiction, *The Plymouth,* 3 Wall. 20; *Kermarec* v. *Compagnie Generale,* 358 U. S. 625. Oregon would be required, therefore, to look to maritime law in deciding it. *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255.[7]

Although admiralty law itself confers no right of action for wrongful death, *The Harrisburg,* 119 U. S. 199, yet

[7] The petitioner argues that "the place where the act or omission occurred" was on the dam itself, an extension of the land, and that, therefore, this case should be decided in accordance with the law that Oregon would apply to torts occurring on land. It is clear, however, that the term "place" in the Federal Torts Claims Act means the political entity, in this case Oregon, whose laws shall govern the action against the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U. S. C. § 2674. There can be no question but that Oregon would be required to apply maritime law if this were an action between private parties, since a tort action for injury or death occurring upon navigable waters is within the exclusive reach of maritime law. *The Plymouth,* 3 Wall. 20, 35, 36. See Magruder and Grout, Wrongful Death Within The Admiralty Jurisdiction, 35 Yale L. J. 395, 404. This case does not involve the question that would be presented if wrongful conduct occurring within the territory of one political entity caused injury or death within a different political entity. Cf. *Eastern Air Lines* v. *Union Trust Co.,* 95 U. S. App. D. C. 189, 221 F. 2d 62.

"where death . . . results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given." *Western Fuel Co: v. Garcia,* 257 U. S. 233, 242. See *The Hamilton,* 207 U. S. 398; *La Bourgogne,* 210 U. S. 95; *Levinson v. Deupree,* 345 U. S. 648; *The Tungus v. Skovgaard,* 358 U. S. 588; *United Pilots Assn. v. Halecki,* 358 U. S. 613. In such a case the maritime law enforces the state statute "as it would one originating in any foreign jurisdiction." *Levinson v. Deupree,* 345 U. S. 648, 652.

This means that in an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under admiralty's standards of duty, but under the substantive standards of the state law. *United Pilots Assn. v. Halecki,* 358 U. S. 613, 615. See also *Curtis v. A. Garcia y Cia.,* 241 F. 2d 30 (C. A. 3d Cir.); *The H. S., Inc.,* 130 F. 2d 341 (C. A. 3d Cir.); *Klingseisen v. Costanzo Transp. Co.,* 101 F. 2d 902 (C. A. 3d Cir.); *Graham v. A. Lusi, Ltd.,* 206 F. 2d 223 (C. A. 5th Cir.); *Truelson v. Whitney & Bodden Shipping Co.,* 10 F. 2d 412 (C. A. 5th Cir.); *Quinette v. Bisso,* 136 F. 825 (C. A. 5th Cir.); *Lee v. Pure Oil Co.,* 218 F. 2d 711 (C. A. 6th Cir.); *Feige v. Hurley,* 89 F. 2d 575 (C. A. 6th Cir.); *Holley v. The Manfred Stansfield,* 269 F. 2d 317 (C. A. 4th Cir.).[8] "[A]dmiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State." *Garrett v. Moore-McCormack Co.,* 317 U. S. 239, 245.

---

[8] We are not here concerned with those rights conferred by the Death on the High Seas Act, 41 Stat. 537 *et seq.,* 46 U. S. C. § 761 *et seq.;* the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688; or the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 *et seq.,* 33 U. S. C. § 901 *et seq.*

Accepting this principle, we find no constitutional impediment to the application, by the maritime law, of Oregon's Employers' Liability Law to a death action in which the statute would otherwise by its terms apply. We are concerned with constitutional adjudication, not with reaching particular results in given cases. What was said last Term in deciding *The Tungus* v. *Skovgaard,* 358 U. S. 588, is controlling here:

> "The policy expressed by a State Legislature in enacting a wrongful death statute is not merely that death shall give rise to a right of recovery, nor even that tortious conduct resulting in death shall be actionable, but that damages shall be recoverable when conduct of a particular kind results in death. It is incumbent upon a court enforcing that policy to enforce it all; it may not pick or choose." 358 U. S., at 593.

> "Even *Southern Pacific Co.* v. *Jensen,* which fathered the 'uniformity' concept, recognized that uniformity is not offended by 'the right given to recover in death cases.' 244 U. S. 205, at 216. It would be an anomaly to hold that a State may create a right of action for death, but that it may not determine the circumstances under which that right exists. The power of a State to create such a right includes of necessity the power to determine when recovery shall be permitted and when it shall not. Cf. *Caldarola* v. *Eckert,* 332 U. S. 155." 358 U. S., at 594.

We leave open the question whether a state wrongful death act might contain provisions so offensive to traditional principles of maritime law that the admiralty would decline to enforce them. The Oregon statute here in issue presents no such problem. Indeed, as the petitioner points out, the Employers' Liability Law contains many provisions more in consonance with traditional principles of admiralty than the State's general wrongful death

statute. We hold, therefore, that the right of action for wrongful death created by the Oregon Employers' Liability Law may be invoked to recover for a maritime death in that State without constitutional inhibition.

Whether the statute by its terms, and as construed by the Oregon Supreme Court, would extend to the present case, and whether, if the statute is applicable, the United States violated the standard of care which it prescribes, are questions which we do not undertake to decide, and upon which we intimate no view. The District Court made an alternative ruling that the statute was inapplicable as a matter of state law. The Court of Appeals did not reach the question. Although this issue has been argued here, we leave its disposition to a court more at home with the law of Oregon.[9]

The judgment is set aside and the case remanded to the United States Court of Appeals for the Ninth Circuit.

*So ordered.*

The Chief Justice, Mr. Justice Black, Mr. Justice Douglas and Mr. Justice Brennan join the opinion of the Court, but solely under compulsion of the Court's ruling in *The Tungus* v. *Skovgaard,* 358 U. S. 588. They believe that as long as the view of the law represented by that ruling prevails in the Court, it should be applied

---

[9] In contending that the statute is applicable, the petitioner refers us to the following Oregon decisions, among others: *Byers* v. *Hardy,* 68 Ore. Advance Sheets 557, 337 P. 2d 806; *Drefs* v. *Holman Transfer Co.,* 130 Ore. 452, 280 P. 505; *Rorvik* v. *North Pacific Lumber Co.,* 99 Ore. 58, 190 P. 331, 195 P. 163; *C. D. Johnson Lumber Corp.* v. *Hutchens,* 194 F. 2d 574; *Coomer* v. *Supple Investment Co.,* 128 Ore. 224, 274 P. 302; *Myers* v. *Staub,* 201 Ore. 663, 272 P. 2d 203; *Tamm* v. *Sauset,* 67 Ore. 292, 135 P. 868; *Warner* v. *Synnes,* 114 Ore. 451, 230 P. 362, 235 P. 305; *Walters* v. *Dock Commission,* 126 Ore. 487, 245 P. 1117, 266 P. 634, 270 P. 778. The United States, in asserting that the statute is inapplicable, cites many of the same Oregon authorities.

evenhandedly, despite the contrary views of some of those originally joining it that state law is the measure of recovery when it helps the defendant, as in *Tungus,* and is not the measure of recovery when it militates against the defendant as it does here. However, they note their continued disagreement with the ruling in *The Tungus,* and reserve their position as to whether it should be overruled, particularly in the light of the controversy application of it has engendered among its original subscribers. See the various separate opinions in this case and in *Goett* v. *Union Carbide Corp., post,* p. 340.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER joins, dissenting.

Since *The Hamilton,* 207 U. S. 398, it has been settled law that an action *in personam* for wrongful death occurring on navigable waters, not available under maritime law, *The Harrisburg,* 119 U. S. 199, may be brought under a state wrongful death statute. In *The Tungus* v. *Skovgaard,* 358 U. S. 588, decided last Term, we held that such an action could be maintained only in accordance with the limitations placed upon it by state law. This case presents the further question, not involved in *The Tungus,* namely, whether such an action lies when the conduct said to give rise to liability is measured under state law by greater substantive standards of duty than those which would have governed the same conduct under maritime law had death not occurred.[1]

The Court, if I read its opinion aright, holds that when a victim of a maritime tort dies as a result of such con-

---

[1] The Court in *The Tungus* was concerned only with possible *limitations* imposed by New Jersey law on the assertion of causes of action for unseaworthiness and negligence, both of which the Court, accepting the views of the Court of Appeals, considered were embraced by the state wrongful death statute. The case did not present the question whether such a statute might confer *enlarged* substantive rights not afforded by maritime law.

duct the law of the State whose wrongful death statute is invoked *wholly* governs liability.[2]  At the same time the Court leaves open the question whether a state wrongful death act might contain "provisions so offensive to traditional principles of maritime law that the admiralty would decline to enforce them," finding that this Oregon statute "presents no such problem."

I cannot agree with the view that wrongful death actions growing out of maritime torts are so pervasively controlled by state law, or with the conclusion that this state statute in its substantive provisions is, in any event, not offensive to maritime law.  Nor can I subscribe to the intimation that the question which the Court reserves is seriously open to debate.  Because of the importance of the issue, a fuller statement of my views is justified than might be appropriate in a case of lesser general concern.

## I.

It is surely beyond dispute that the Oregon Employers' Liability Law, Ore. Rev. Stat. § 654.305, imposes a stricter standard of duty than that imposed by maritime law.  Under maritime law the basis of liability in cases like this is the failure to use reasonable care in light of the attendant circumstances, that is, negligence.  See *Kermarec* v. *Compagnie Generale*, 358 U. S. 625, 630, 632.  The state statute, on the other hand, imposes the duty to use—

> "every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserv-

---

[2] I agree with the Court that the provision of the Federal Tort Claims Act rendering the United States liable in accordance with the "law of the place where the act or omission occurred," 28 U. S. C. § 1346 (b), manifests no intention to convert a maritime tort into a land tort, and that this case must be treated as one falling within maritime jurisdiction. See p. 318, and note 7, *ante.*

ing the efficiency of the . . . device, and without regard to the additional cost of suitable material or safety appliance [*sic*] and devices." Ore. Rev. Stat. § 654.305.

Oregon itself has recognized that this statute imposes a "much higher degree of care," *Hoffman* v. *Broadway Hazelwood,* 139 Ore. 519, 524, 10 P. 2d 349, 351, 11 P. 2d 814, than that generally required of defendants in accident cases. See *Camenzind* v. *Freeland Furniture Co.,* 89 Ore. 158, 172–173, 174 P. 139, 144. So much indeed I do not understand the Court to deny.

## II.

Had this accident resulted in injuries short of death, it is clear that the United States could not have been held liable except in accordance with the standards of duty imposed by maritime law. This follows from the general constitutional doctrine of federal supremacy in maritime affairs, and more particularly from the rule first unmistakably announced in *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, which rejected the notion that the "saving clause" of § 9 of the Judiciary Act of 1789, 1 Stat. 77, permitted the application in maritime tort cases of state substantive rules in derogation of maritime law.[3] That

---

[3] While discussions of the current maritime supremacy doctrine usually commence with *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, the *Chelentis* case seems a more appropriate point of beginning in this instance. *Jensen* was of course a workmen's compensation case, and might be thought to have rested on the view that the "common law remedy" preserved by the "saving clause" did not embrace the compensation remedy; "of a character wholly unknown to the common law." 244 U. S., at 218. It remained for later cases to establish that *Jensen* reflected a broader principle.

It should be added that, while the results in *Jensen* and some of its progeny have been widely criticized, there is general recognition of the validity of its premise. As Gilmore and Black put it, The Law of Admiralty, § 1–17: "If there is any sense at all in making maritime

case was a maritime tort action brought in a state court by a seaman, seeking compensatory damages for injuries claimed to have been caused by the negligence of his employer. Historically, maritime law recognized no such cause of action. The duty of a shipowner to an injured crewman was only to provide for his maintenance and cure, and that irrespective of negligence; full indemnity was owing only for breach of the warranty of seaworthiness.[4] The Court held, first, that § 20 of the Merchant Marine Act of 1915, 38 Stat. 1185,[5] notwithstanding, such was still the rule. This being so, a state court was not free to apply any other rule to a maritime tort:

> "Plainly, we think, under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law. Under the circumstances here presented, without regard to the court where he might ask relief, petitioner's rights were those recognized by the law of the sea." *Id.*, at 384.

This rule was soon reiterated in two subsequent cases. The first was *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 255, which, like *Chelentis*, was a state court action by a crew member against the shipowner. Injury was allegedly caused by mislabeling of a can of gasoline and

---

law a federal subject, then there must be some limit set to the power of the states to interfere in the field of its working." See also Stevens, Erie R. R. v. Tompkins and the Uniform General Maritime Law, 64 Harv. L. Rev. 246.

[4] The classic formulation is that found in *The Osceola*, 189 U. S. 158, 175.

[5] Providing that "seamen having command shall not be held to be fellow-servants with those under their authority."

by the negligent failure to stock a life preserver on board.
A judgment for plaintiff was affirmed, but on the ground
that the vessel was unseaworthy in the respects named;
the existence of a cause of action for negligence was
denied. "The general rules of the maritime law apply
whether the proceeding be instituted in an admiralty or
common-law court." *Id.*, at 259. The second case was
*Robins Dry Dock Co.* v. *Dahl*, 266 U. S. 449, where the
action, again in a state court for negligence, was by
an employee of an independent contractor against his
employer for a shipboard injury. Such a right of action
existed in admiralty, *Atlantic Transport Co.* v. *Imbrovek*,
234 U. S. 52, and the question was as to the scope of the
defendant's duty. Here too the same principle of federal
supremacy was upheld. An instruction permitting the
jury to consider the requirements of a state safety statute
on the issue of negligence was held erroneous. "The
rights and liabilities of the parties arose out of and
depended upon the general maritime law and could not be
enlarged or impaired by the state statute." 266 U. S.,
at 457.

Largely owing to the passage of the Jones Act, 46
U. S. C. § 688,[6] which bound nonadmiralty as well as
admiralty courts,[7] the issue was not again raised in litiga-
tion here for several decades. *Garrett* v. *Moore-McCor-
mack Co.*, 317 U. S. 239, however, demonstrates the
pervasive scope given to the same principle of federal
supremacy in the application of that Act. There a State
was denied power, by characterizing the matter as "pro-
cedural," to apply its own rules to the question of burden
of proof of fraud in the obtaining of a release from an
injured seaman. Rather the state court was required to

---

[6] See the account in Gilmore and Black, *op. cit., supra,* 376–377.
[7] See *Socony-Vacuum Co.* v. *Smith*, 305 U. S. 424; *Beadle* v.
*Spencer,* 298 U. S. 124; *The Arizona* v. *Anelich*, 298 U. S. 110.

apply the rule adopted by federal maritime law. The case thus manifests the continued vitality of the supremacy principle in this area. 317 U. S., at 244, n. 10.

It remained for *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, unmistakably to demonstrate that the principle embodied in the *Chelentis, Sandanger,* and *Robins Dry Dock* decisions had not withered with time. There a shore-based carpenter, employed by an independent contractor, sought a recovery against a shipowner based on negligence [8] and unseaworthiness. The Court held that under federal law a right of action was available on both grounds, and that under the maritime rule the effect of plaintiff's contributory negligence was to diminish, but not wholly defeat, his recovery. This being so, a State was debarred from applying another rule.

Finally, when, only last Term, the Court came to consider, in *Kermarec* v. *Compagnie Generale,* 358 U. S. 625, the scope of a shipowner's duty of care toward a social guest of a crew member, it had no hesitation about the proposition that federal law must govern an action within the jurisdiction of admiralty.

> "The District Court was in error in ruling that the governing law in this case was that of the State of New York. Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law. . . . If this action had been brought in a state court, reference to admiralty law would have been

---

[8] The cause of action for negligence did not of course rest on the Jones Act, since Hawn was not a seaman, but on the traditional admiralty doctrine imposing on a shipowner a duty to use reasonable care to avoid injuring an invitee. See, *e. g., The Max Morris,* 137 U. S. 1.

necessary to determine the rights and liabilities of the parties. *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255, 259. Where the plaintiff exercises the right conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial. Whatever doubt may once have existed on that score was effectively laid to rest by *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, 410–11." *Id.,* at 628.

I think it is clear, then, that the supremacy principle established by this line of cases may not be shrugged off as a discredited relic of an earlier day.[9] Indeed, the Court's total disregard of that principle in the present case is not grounded on the view that it is no longer generally viable. Rather, the Court appears to consider it inapplicable in an action for wrongful death. For reasons now to be discussed I think this is a mistaken view.

### III.

What I shall address myself to at this point is the reason why maritime law permits resort to state wrongful death statutes.[10] For it is only through an understanding

---

[9] Nothing in *Caldarola* v. *Eckert,* 332 U. S. 155, may properly be taken as impinging upon the continued vitality of the supremacy principle as enunciated in the *Chelentis* case and its successors. Cf. Stevens, Erie R. R. v. Tompkins and the Uniform General Maritime Law, 64 Harv. L. Rev. 246, 263. Nor has this doctrine otherwise become diluted as seems to be suggested by Hart and Wechsler, The Federal Courts and the Federal System, 482–483. Any doubts which might have existed on this score were "effectively laid to rest by *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, 410–411." *Kermarec* v. *Compagnie Generale, supra,* at 628.

[10] Prior to the decision in *The Harrisburg, supra,* the Court had rejected claims that maritime tort actions in state courts based upon a local death statute were not within the "saving clause," *Steamboat Co.* v. *Chase,* 16 Wall. 522, or were offensive to the Commerce Clause, *Sherlock* v. *Alling,* 93 U. S. 99, 102–103. Subsequently, in *The Ham-*

of that reason that light can be shed on the pivotal issue in this case.

Unfortunately such rationalization as has been made of the problem in the wrongful death cases in this Court does not carry us very far. Mr. Justice Holmes in *The Hamilton* was content to say no more than that permitting state death statutes to be used would not produce "any lamentable lack of uniformity" in the maritime law. 207 U. S., at 406. Mr. Justice McReynolds in *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, simply observed that the use of such statutes was "the logical result of prior decisions," that "[t]he subject is maritime and local in character," and that the innovation "will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations." *Id.,* at 242.[11]

---

*ilton, supra,* it was, with little difficulty, held that a plaintiff could assert in admiralty a right of action grounded on a state wrongful death act. See also *La Bourgogne,* 210 U. S. 95, 138. *Jensen* recognized the doctrine of these cases, 244 U. S., at 216, and in *Western Fuel Co.* v. *Garcia,* 257 U. S. 233, the post-*Jensen* Court expressly held that the rule of *The Hamilton* had not been displaced. See also *Great Lakes Co.* v. *Kierejewski,* 261 U. S. 479; *Spencer Kellogg Co.* v. *Hicks,* 285 U. S. 502, 512–513.

The significance of such early cases as *Chase* and *Alling* in the history of the uniformity principle has now become largely academic, in view of the twentieth century developments.

[11] This analysis leaves unexplained the sense in which wrongful death actions are local. That attribute obtains irrespective of the character of the decedent's activities, although the "maritime but local" doctrine generally turned on the nuances of exactly that element. *E. g., Grant Smith-Porter Co.* v. *Rohde,* 257 U. S. 469; see Robinson, Admiralty, 103; 2 Larson, Law of Workmen's Compensation, § 89.22. Put another way, an action for wrongful death is "local" although, had the victim lived, his action for damages would, by reason of the nature of his activities, not have been "local." Thus, it is some characteristic of a wrongful death action itself which permits application of state law.

Other rationalizations of the subject leave much to be desired. It has been said that the application of state wrongful death statutes is permitted to "fill a void" in maritime law. See, e. g., 41 Va. L. Rev. 251, 252; 34 B. U. L. Rev. 365, 366; cf. *The Tungus, supra,* at 592. But there is a "void" only in the sense that there is an absence of a right of action in such cases; admiralty does not lack a rule on the subject. It has also been suggested that the Court permits the application of state death acts because it regards such statutes as wiser in this respect than maritime law, although it deems itself unable to alter the disfavored federal rule. See, e. g., Note, 73 Harv. L. Rev. 84, 148, 149. But if the rule of *The Harrisburg* is so firmly established that legislation is the only available means of reform, cf. *The Tungus, supra,* at 590, 599, it is scarcely legitimate to turn, for that very reason, to state law.

I think the fault with such explanations lies in the emphasis given to admiralty's endeavor to find in state law a supplement to its own shortcomings, something which federal power has always been fully competent to remedy internally on its own account. Instead, the proper point of departure is, I believe, to recognize that in permitting use of wrongful death statutes admiralty is endeavoring to accommodate itself to state policies represented by such statutes. That indeed appears to have been the approach of Congress in enacting the Death on the High Seas Act, for as was said in *The Tungus* the legislative history of that Act "discloses a clear congressional purpose to leave 'unimpaired the rights under State statutes as to deaths on waters within the territorial jurisdiction of the States'" and "reflects deep concern that the power of the States to create actions for wrongful death in no way be affected by enactment of the federal law." 358 U. S., at 593. At the same time there was no suggestion that Congress contemplated that the

supremacy of admiralty law should be yielded to the States in maritime death cases. Cf. *id.*, at 607–608, separate opinion.

It only confuses things to say, as has sometimes been loosely remarked, that in maritime wrongful death cases admiralty absorbs state law, or that the States have embraced maritime law. State and maritime systems of law stand separately, even though the two may not always be mutually exclusive, and when a conflict arises the latter yields to the former only in face of a superior state interest. This, I think, is what Mr. Justice McReynolds had in mind when he stated in *Garcia* that a wrongful death statute is a subject both "maritime and local in character." The true inquiry thus becomes one involving the nature of the state interest in a wrongful death statute, the extent to which such interest intrudes upon federal concerns, and the basis of the reasoning that led Mr. Justice Holmes to state summarily in *The Hamilton* that resort to such statutes would not result in "any lamentable lack of uniformity" in maritime law.

What no lesser authority in admiralty matters than Judge Addison Brown said many years ago in *The City of Norwalk*, 55 F. 98,[12] is highly illuminating. He gave these reasons for permitting a state death statute to apply to a maritime tort:

> "(1) It is a general law of personal rights, not specially directed to commerce or navigation, but applying alike on sea or shore; (2) it is within the police power; for it is 'a statute intended to protect life,' (Huntington v. Attrill, 146 U. S. 657, 675 . . .) through one of the most effectual of all sanctions, viz. by imposing on the offender a liability to pay a pecu-

---

[12] The decision was affirmed as to this ground *sub nom. The Transfer No. 4*, 61 F. 364, 367–368, certificate dismissed on motion *sub nom. McCullough* v. *New York, N. H. & H. R. Co.*, 163 U. S. 693.

niary indemnity; while in the interest of the public, it also tends to avert the dependency or pauperism of the survivors by shifting the burden of their support, in part at least, from the community to the authors of the wrong; (3) it is local in its scope and interferes in no way with any needful uniformity in the general law of the seas, or with international or interstate interests." *Id.,* at 108.

Where tortious conduct causes death, the decision of a State to provide a right of action in favor of the victim's estate or beneficiaries represents a response to considerations peculiarly within traditional state competence: providing for the victim's family, and preventing pauperism by shifting what would otherwise be a public responsibility to those who committed the wrong. These are matters intimately concerned with the State's interest in regulating familial relationships. Moreover, where the injury is wrongful under maritime law, this is the predominant, if indeed not the sole, purpose of the statute. In such instances the State is not legislating in order to affect the defendant's conduct, since by hypothesis a federally imposed duty already exists. For merely because no federal action lies for wrongful death, one can hardly say that there is no duty not to kill through negligence, but there is a duty not to injure. The tortious conduct is the same in either case, and wrongful under federal law. The state statute therefore makes no meaningful inroads on federal interests. To quote further from Judge Brown:

"The state statute does not create the *cause* of action. It does, indeed, create a new *right,* and liability; but it does not create a single one of the elements that make up the fundamental cause of action, that is, the essential grounds of the demand. All these elements exist independently of the statute, and are not in the least affected by it. It no more creates

the wrong, or the damage, than it creates the negligence or the death; nor does it, as in the pilotage and double wharfage cases, add anything to the damages sustained. It authorizes no recovery except for 'the pecuniary damages' already existing. It is apparent, therefore, that, as suggested by Mr. Justice Clifford in Steamboat Co. v. Chase, 16 Wall. 532, the statute does no more than 'take the case out of the operation of the common-law maxim that an action for death dies with the person.'" 55 F., at 109.

"Before the statute, the case was *damnum absque injuria;* by the statute, it became at once a tort in the full legal sense, and a *marine tort* by reason of its place, its nature, and its circumstances . . . ." *Id.,* at 110.

Thus, where the duty imposed by a state death act is no greater than that already existing under federal law, the application of the statute is solely, or nearly so, a reaction to strong, localized state interests, and there is no real encroachment on federal interests.[13]

---

[13] This reasoning has found reflection in maritime cases outside the realm of wrongful death actions. *Just* v. *Chambers,* 312 U. S. 383, permitted the application to a maritime tort of a state statute providing for survival of an action against a deceased tortfeasor. Here, too, decedent had breached a federal duty for which, had he lived, he would have had to answer. The State's decision to protect plaintiffs from loss in this way reflected only local interests, and made no encroachment on maritime interests.

*Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109, a contract action, involved the question of the validity, as applied to a maritime contract, of a state statute making agreements to arbitrate specifically enforceable. The decision proceeded from the premise that arbitration agreements were valid obligations under maritime law, and that the statute merely added the remedy of specific performance to the traditional remedy of damages. See, *id.,* at 123–125. While there the state interest in enforcing such agreements was not as peculiarly local as is true of wrongful death cases, the fact that admiralty

Far different is the case when a State purports, as here, to impose a duty which under federal law a person does not bear. Then it can hardly be said that the State is not seeking to regulate conduct within federal maritime jurisdiction. The very purpose of a statute like the one here invoked is to induce those to whom it applies to take the precautions required by it. In such a case, the mere fact that it is a death act which imposes the duty cannot be thought to render the import of the matter of "local" concern only. The state interests given expression no longer are predominantly those peculiarly within state concern. By the same token the intrusion into federally regulated interests is no longer minimal.

I can find no justification, consistent with the course of adjudication in this Court, for upholding state power here, without so much as even suggesting the need for an inquiry as to the extent of federal interest in the activity in question.[14]

## IV.

Nothing in the wrongful death cases on which the Court relies calls for today's holding. None of them involved, as here, the assertion of any local rules of substantive law going beyond those applicable under federal standards.[15]

---

acknowledged the validity of arbitration clauses in contracts, and recognized a duty to live up to them, rendered the intrusion into federal interests so minimal as to justify the result.

[14] It may be that the existence of an overriding federal interest is not to be inferred solely from the fact that the tort is maritime, in the sense that admiralty has jurisdiction over it. Cases may be put in which the connection with maritime activities is so remote or fortuitous that state law should readily be accepted by admiralty where it is otherwise applicable. The Court does not purport to treat this case on any such basis.

[15] See, in this Court: *The Harrisburg, supra.* ("negligence" under Massachusetts and Pennsylvania death statutes); *The Hamilton, supra* ("negligence" under Delaware wrongful death statute); *West-*

The essential failing in the Court's use of these cases is its view that, because rights asserted under a state death statute are manifestly rights created by the State, no federal element is involved in their assertion. The truth is, however, that, where the tort is maritime and the action is brought under the "saving clause," state-created rights may be asserted *only by federal permission*. That is the premise on which *The Hamilton,* and its offspring, proceeded. When such a right is asserted, the plaintiff must, however, show more than that a State can give

*ern Fuel* v. *Garcia, supra* ("negligence" under California wrongful death statute); *La Bourgogne,* 210 U. S. 95 ("fault" under French wrongful death law); *Levinson* v. *Deupree,* 345 U. S. 648 ("negligence or wrongful act" under Kentucky wrongful death statute); *The Tungus* v. *Skovgaard, supra* ("wrongful act, neglect or default" under New Jersey wrongful death statute); *United Pilots Assn.* v. *Halecki,* 358 U. S. 613 (same New Jersey statute as in *The Tungus*).

See, in the lower federal courts: *Curtis* v. *A. Garcia y Cia.,* 241 F. 2d 30 ("unlawful violence or negligence" under Pennsylvania wrongful death statute); *The H. S., Inc., No. 72,* 130 F. 2d 341 ("wrongful act, neglect or default" under New Jersey wrongful death statute); *Klingseisen* v. *Costanzo Transp. Co.,* 101 F. 2d 902 (same Pennsylvania wrongful death statute as in the *Curtis* case); *Graham* v. *A. Lusi, Ltd.,* 206 F. 2d 223 ("wrongful act, negligence, carelessness or default" under Florida wrongful death statute); *Truelson* v. *Whitney & Bodden Shipping Co.,* 10 F. 2d 412 ("wrongful act, neglect, carelessness, unskilfulness [*sic*], or default" under Texas wrongful death statute); *Quinette* v. *Bisso,* 136 F. 825 ("fault" under Louisiana wrongful death statute); *Lee* v. *Pure Oil Co.,* 218 F. 2d 711 ("wrongful act, omission, or killing" under Tennessee wrongful death statute); *Feige* v. *Hurley,* 89 F. 2d 575 ("negligence or wrongful act" under Kentucky wrongful death statute); *Holley* v. *The Manfred Stansfield,* 269 F. 2d 317 ("wrongful act, neglect, or default" under Virginia wrongful death statute).

Thus, in not one of the foregoing cases, either here or in the lower courts, did the standard of liability under the respective state laws exceed the standard of liability in admiralty had the injury not resulted in death.

him a right to recover; he must also show that it has done so. Thus, if a State has chosen not to provide a right of action to one who does not sue within a stated period, *The Harrisburg, supra; Western Fuel Co.* v. *Garcia, supra; Levinson* v. *Deupree,* 345 U. S. 648, 651–652; to one who does not have a stated relationship to the decedent, *id.,* at 651; to one whose decedent's negligence contributed to the fatal injury, *United Pilots Assn.* v. *Halecki,* 358 U. S. 613, 615; or to one whose right of action is based on breach of the uniquely maritime duty to provide a seaworthy ship, *The Tungus* v. *Skovgaard, supra,* there can be no right of recovery, for neither federal nor state law affords it.[16] For this reason, when asking whether a plaintiff has made out a cause of action under a state death act, the Court approaches the statute "as it would one originating in any foreign jurisdiction," *Levinson* v. *Deupree, supra,* at 652, in an "endeavor to determine the issues in accordance with the substantive law of the State," *Garrett* v. *Moore-McCormack Co.,* 317 U. S., at 245. This, because the State having created the right, one must look to state law to "determine the circumstances under which that right exists." *The Tungus, supra,* at 594.

But none of these cases is apposite when the question is not whether a federally permitted state right of action has in fact been conferred by the State, but whether fed-

---

[16] See also *The H. S., Inc., No. 72, supra,* where recovery rested on the appellate court's decision that the State whose wrongful death statute was sought to be made the basis of recovery imposed liability upon the defendant, in the circumstances there presented, for the tort of its employee. There was no suggestion that application of substantive federal martime standards would have led to a different result.

The remaining lower court cases relied on by the Court, and referred to in note 15, *supra,* involved the same issues as those presented in the *Halecki* and *Tungus* cases.

eral maritime law permits the State to create an asserted right of action. It is surely fallacious to reason that, because the principle of the supremacy of federal maritime law has been held not to bar a right of action for death caused by a defendant's failure to take reasonable precautions to avoid exposing those to whom the duty is owed to an undue risk of harm, it follows that such principle does not bar a right of action for death caused by failure to "use every device, care and precaution which it is practicable to use," Ore. Rev. Stat. § 654.305. When the Court, in *The Hamilton* and its successors, held that the federal supremacy principle did not prevent a State from giving any right of action for wrongful death caused by a maritime tort, it did not thereby eschew forever all federal limits on the content of substantive obligations appearing in statutes bearing the label "wrongful death act."

It may be that the Court does not intend to go so far. It asserts, albeit almost as an afterthought, that some state doctrines might be constitutionally inapplicable to maritime torts, notwithstanding that they are embodied in a death statute.[17]  It then summarily finds the possible reservation inapplicable in this instance on the ground that other provisions of the Oregon Employers' Liability Law, not here involved, resemble some admiralty doctrines, with which also we are not now concerned, more than do comparable provisions in the State's general wrongful death statute, which presumably can be constitutionally applied to a maritime tort. With all deference, I must say that the total irrelevance of that fact seems plain. We are not reviewing the general constitutionality

---

[17] In such a case, of course, not only would "the admiralty . . . decline to enforce," *ante*, p. 320, the challenged provision, but federal law would inhibit a common-law court, state or federal, from applying it to a maritime tort action.

of the Employers' Liability Law; we are concerned only with the constitutionality of the standard-of-care provisions of that law, as applied to an employee of an independent contractor injured on navigable waters and seeking to impose liability upon the owner and operator of a dam. The Court does not find that the federal interest in regulating the conduct of the dam owner is so minimal—whether by reason of the fixed situs of the dam or on some other ground—that the federal supremacy principle may reasonably be found inapplicable. Neither does the Court assert, for it could scarcely do so, that the standard of care required by this statute is not significantly greater than that imposed by federal law. Thus, if the principle of the supremacy of maritime law calls for anything more than an empty nod, it calls for a result contrary to that reached today.

It is suggested that a contrary decision will lack "evenhandedness," apparently for the reason that, since those invoking state death statutes must sometimes bear the burden of comparatively unfavorable provisions, it is only fair that, when more favorable provisions obtain, they be able to enjoy the benefits of such rules. But, as the Court points out, "[w]e are concerned with constitutional adjudication, not with reaching particular results in given cases." Such unevenhandedness as there may be in this area is the consequence of the rule of *The Harrisburg*, to which this Court has steadfastly adhered for nearly 75 years,[18] and which Congress, when it enacted the Death on the High Seas Act, saw fit to change only in a limited way. See *The Tungus, supra,* at 592–593. When federal law permits the application of state death acts, those on whom the state statute confers a right of action may escape the harsh consequences of that rule. Those whom the state

---

[18] See cases cited, note 15, *supra.*

law has declined to benefit are left as they were. Certainly we should not, in the name of "evenhandedness," permit a State to exceed constitutional limitations merely because in some instances it may have chosen not to do all it might under the Constitution.[19]

I would affirm.

Memorandum of MR. JUSTICE WHITTAKER,

Except for its implication, or conclusion if it may be intended to be such; that maritime torts committed on the navigable waters of a State which result in death are governed by the general substantive tort law of the State—not by the general federal maritime law as remedially supplemented only by the State's Wrongful Death Act—which conflicts with my views as expressed in my dissent in *Goett* v. *Union Carbide Corp.*, decided today, *post*, p. 345, I join my Brother HARLAN's dissent.

---

[19] It ought not to have been necessary to say explicitly that this opinion rests upon evenhanded application of a rule of constitutional law which permits the enforcement of state-afforded substantive rights under state wrongful death statutes *only* so long as such rights do not offend those established by the maritime law. Faithful adherence to that rule of course may lead to different results in different situations, depending upon the extent of the rights given by state law. In *The Tungus*, the rights accorded by state law were permitted to prevail because they were not offensive to those recognized by maritime law. Here the state-created right cannot prevail because it is flatly opposed to that existing under maritime law. In short, these opposite results are not attributable to any differences in the constitutional rule applicable in the two cases—a rule which remains the same in all wrongful death cases—but to differences in the character of the substantive rights afforded by the two wrongful death statutes involved.