Gay MARCUM, individually, and Gay Marcum, Administrator of the Estate of Ada B. Marcum, deceased, and Gay Marcum, Administrator of the Estate of Stevie Marcum, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third-Party Defendant.

Civ. A. No. 901.

United States District Court
W. D. Kentucky,
Owensboro.

Aug. 9, 1962.

B. C. Green, Owensboro, Ky., for plaintiffs.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

John B. Anderson, Owensboro, Ky., for third party defendant.

BROOKS, Chief Judge.

This action is based on the Federal Tort Claims Act, 28 U.S.C.A. § 1346, and is brought to recover damages resulting from an automobile accident. The primary issue to be determined is whether the government employee, Ernest E. Bell, the owner and operator of the pickup truck which collided with plaintiff's automobile, was acting within the scope of his employment at the time the accident occurred.

In July 1959, Bell was employed on an hourly basis as a carpenter foreman by the Geological Survey Division of the Department of Interior of the United States to construct three stream gauges, small structures used to record water levels. He was to build the gauges with a small crew of men under the direct supervi-

sion of R. H. Jackson, a government engineering technician. At the time he was employed he owned a small pickup truck and requested permission to use it on the job, but was told that the supervisor would have a government truck and that there was no authority for the hiring of his vehicle.

The three gauge stations to be constructed were known as the Glen Dean, Priceville and White Mills projects, and the area in which they were located was approximately seventy miles from Bell's home which was in Calhoun, Kentucky. To be closer to his work, he rented a room in Bonnieville, Kentucky, approximately twenty miles from the job sites, and it was his custom to return to his home in Calhoun only on weekends. When he entered upon his employment, he used his truck for his own convenience in traveling back and forth to work and to haul his carpenter tools. Subsequently, however, the government supervisor did authorize him to use his truck to pick up small supplies when the need developed and when the government truck, which was driven by the supervisor, was not available. There was no discussion of the compensation to be paid but it was the understanding and, with some exceptions, the general practice for Bell, when he knew they were needed, to pick up these supplies, such as small orders of lumber, nails and the like, at a Bonnieville hardware and lumber company at which the government had a charge account, and to take the supplies to the job site when he returned to work the following morning. The exceptions to this practice were when the government supervisor would expressly request him to use his truck during regular working hours on a particular mission. This occurred on at least four occasions during construction of the Glen Dean and Priceville projects. One of the occasions was when they ran short of concrete blocks and both Bell's truck and the government truck were used to haul in an additional supply. Two trips were made by Bell to haul lumber on the Glen Dean job, and one trip was made to haul a tool box

between job sites. After the Glen Dean and Priceville jobs were substantially completed, Bell was paid, in addition to his regular hourly wages, thirty dollars for the use of his truck on these two projects. No effort was made to evaluate the use of the truck on a mileage or an hourly basis and no demand for payment of any amount was made upon the Government. The amount paid was the supervisor's estimate of the value of the truck usage.

On the day of the accident, Wednesday, November 4, 1959, Bell and his crew of men were working at the White Mills job site when rain caused the crew to be dismissed at eleven o'clock in the morning. Bell testified that when he left the job site it was his intention to go to Calhoun where he had some cable which he desired to use on the job, and also to pick up some small supplies and to obtain a box of his personal tools which he had forgotten and left there on his last trip home. He planned to spend the night and to return to work the following morning. He further testified that he had no intention of making any charge for the use of his truck on this trip, but that he did expect to collect for a full eight hour day. The accident occurred at approximately 2:00 o'clock in the afternoon and his eight hour work day would have ended at 3:30 in the afternoon.

■■ The United States is liable under the Tort Claims Act for damages for personal injury or death to the same extent as a private person would be liable under like circumstances, and the question of whether the employee in this case was acting within the scope of his employment and whether liability exists must be determined in accordance with the law of Kentucky where the tortious act occurred. 28 U.S.C.A. § 1346(b); Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305; United States v. Schultz, 282 F.2d 628 (1st Cir.), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L. Ed.2d 695; United States v. Taylor, 236 F.2d 649, 74 A.L.R.2d 860 (6th Cir.), cert. granted, 352 U.S. 963, 77 S.Ct. 364,

1 L.Ed.2d 320, dismissed per stipulation, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19; Baker v. United States, 97 U.S.App.D.C. 281, 230 F.2d 831 (D.C. Cir.). The law of Kentucky relating to the doctrine of *respondeat superior* is set forth in Shedd Brown Mfg. Co. v. Tichenor, Ky., 257 S. W.2d 894, as follows:

"Charging one with the negligent acts of another, under the doctrine of respondeat superior, is an arbitrary rule based on public policy; and its justification is that the employer should be vigilant in supervising those in his employ to protect the public generally. See Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S.W.2d 1014. It would be an unfair application of the rule if the 'employer' had no way of guarding against liability by having some control over, or right to control, the particular act or instrumentality which causes the injury.

"The fundamental principle which governs this type of case is thus set forth in 2 Am.Jur., Agency, Section 8:

" 'The theory which in many cases is adopted to differentiate between an agent and an independent contractor is that one is to be regarded as an agent or an independent contractor according to whether he is subject to, or free from, the control of the employer with respect to the details of the work.'

"As stated in American Savings Life Insurance Company v. Riplinger, 249 Ky. 8, at page 17, 60 S.W.2d 115, at page 119:

" 'The right of control of the means of doing the work, or want of it, is the determinative factor when considering the relationship in such cases, for one who has no right of control in this respect over another ought not to be required to respond in damages for his acts.'

"The difficulty lies in the application of this broad principle, and requires careful consideration of the principal's actual or potential control over the particular activity in which the alleged agent was engaged at the time he injured another."

Applying this Kentucky law to the facts of this case, it is clear that a master-servant relationship existed between Bell and the Government while he was engaged in the carpenter work for which he was employed, as the Government controlled and supervised the manner in which the details of his duties were performed. However, a person may serve in a dual capacity and be a servant as to one undertaking for an employer and an independent contractor as to another undertaking for the same employer. American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S.W.2d 115; Sam Horne Motor and Implement Co. v. Gregg, Ky., 279 S.W.2d 755, 53 A.L.R.2d 626; Sears, Roebuck & Co. v. Lea, 198 F.2d 1012 (6th Cir.). And it must be held that Bell was acting as an independent contractor when on his way to Calhoun at the time the accident occurred.

The related facts demonstrate that Bell owned, maintained and operated his truck primarily for his own convenience in going to and from his work and in hauling his carpenter tools. While it is true that he was authorized to use it from time to time on government business when small items were needed on the job, it was understood that he would secure them after regular working hours and bring them to the job site when he returned to work the following morning. These services were independent of his regular duties as a carpenter foreman and with the exception of the several trips made while working on the Glen Dean and Priceville jobs at the specific request and which were subject to the control of his supervisor the Government at no time possessed the power or right to control Bell in the use of his truck or to supervise his method of driving, or direct where and when he was to drive it. He was responsible to the Government only as to the result to be achieved, which was to see that certain required supplies were available when needed on

the job. The Government had no "right of control" as to the details of delivery.

Under Kentucky law "right of control" is of major importance in determining whether or not one person is the employer of another. Shephard Elevator Co. v. Thomas, Ky., 300 S.W.2d 782; American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S.W.2d 115; Shedd Brown Mfg. Co. v. Tichenor, Ky., 257 S.W.2d 894. See also United States v. Eleazer, 177 F.2d 914 (4th Cir.), cert. denied, 339 U.S. 903, 70 S.Ct. 517, 94 L. Ed. 1333; Paly v. United States, 125 F.Supp. 798 (D.Md.), aff'd per curiam, 221 F.2d 958 (4th Cir.); Restatement (Second), Agency, § 239 and § 233, comment c, illustration 3 (1958).

Since the "right of control" did not exist at the time of the accident, and considering all the other circumstances, the Government cannot be required to respond in damages in this action.

Counsel for the Government will tender judgment on notice.