**R. C. (Buck) MARCUM, the father of Marcus Marcum, a deceased minor, Plaintiff-Appellant,**

v.

**UNITED STATES of America, U. S. Corps of Engineers, et al., Defendants-Appellees.**

**No. 71–1966.**

United States Court of Appeals, Fifth Circuit.

Nov. 30, 1971.

Francis H. Hare, Jr., Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiff-appellant.

Wayman G. Sherrer, U. S. Atty., B. Don Hale, Asst. U. S. Atty., Birmingham, Ala., Thomas L. Jones, Atty., Admiralty & Shipping Section, Dept. of Justice, Morton Hollander, Chief, Appellate Section–Civil Div., Walter H. Fleischer, Robert M. Feinson, Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., for defendants-appellees.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

■■ On June 14, 1966, appellant's 16-year-old son, Marcus Marcum, drowned in Lock 13 which was maintained by the United States Corps of Engineers, and located on the Black Warrior River near Tuscaloosa, Alabama. Plaintiff brought suit against the United States alleging negligence and wanton misconduct in allowing a certain valve to remain open in the Lock, thereby creating a dangerous undercurrent beneath the calm surface of the water; and further, in removing protective guard rails and fences and generally failing to warn of the dangerous condition. Suit was brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2674, and as an action arising on navigable waters. The conduct said to give rise to liability in an action for wrongful death in state territorial waters [where the state gives such a right

of action, as does Alabama] is to be measured under the substantive standards of the state law. Hess v. United States, 361 U.S. 314, 319, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960). We, therefore, look to Alabama for the applicable substantive law. The District Court, sitting without a jury, found that the drowning was not the proximate result of any negligence on the part of defendant and entered its judgment accordingly.

The issue before us is whether the findings of the trial court are clearly erroneous. Appellant also urges that the court erred as a matter of law in misapplying the rule of proximate cause.

Plaintiff had employed his son and five other teenage boys to assist him in removing houses from the property adjacent to Lock 13, which structures had been formerly occupied by personnel which staffed the Lock. Several locks, including Lock 13, were to be flooded in conjunction with the completion of a new lock down the river. On the day of the unfortunate incident, Lock 13 had been partially dismantled and was filled with approximately 20 feet of water. Operation of the Lock had been discontinued several days prior to that date, and guard rails and a fence enclosure had been removed. There was no around-the-clock inspection of the area; however, inspection was made by Government personnel two or three times daily. No Government personnel was present at the time of the drowning. Young Marcum and several teenage companions had been diving and swimming back and forth across the Lock chamber several times when all of the boys, except Marcum, got out of the Lock to smoke cigarettes. Sonny Freeman was the last of the boys to leave. At the time he observed Marcum holding on to a ladder on the wall of the Lock. A few minutes later the group returned to find Marcum partially under the water, his head face down, and drifting toward the open valve. When Marcum failed to respond to the boys' calls, Sonny Freeman jumped into the Lock pit in an attempt to pull Marcum to safety, but because of an alleged strong current he was forced to abandon his efforts after coming within a foot or two of him. A volunteer rescue unit was notified, and Robert Delbridge, a member thereof who is also a commercial diver, along with other members of the unit, proceeded to the Lock. Delbridge testified that when he arrived at the Lock he was told by the boys that the body was in the land wall valve. He swam down to the valve and felt a strong current. The current, however, according to Delbridge, had no effect beyond 2 or 3 feet from the valve. He said, "I could feel the current running through my foot, and I knew it was going to be pretty strong, and I didn't have any possibility of working around that valve without running into the danger of getting hung up in it. I came up and went back out on the bank." He requested the Corps of Engineers to lower the water in order to remove pressure from the valve, and again descended when the water was lowered to 9 or 10 feet. Delbridge found the body 15 to 20 feet from the valve. He testified that he did not feel an appreciable current where he located the body, and that in his opinion a drowning victim tends to remain near the point where he goes down; that any current caused by lowering the water in the Lock would have no meaningful effect on the location of the body as it would have tended to move it in a direction toward the valve and not away from it. The District Court accepted Delbridge's version over the testimony of the teenage witnesses in regard to where the body went down and the existence of a current, and found that

"the partially opened valve did not produce a current which trapped an unwary swimmer. The defendant's conduct in this regard was not negligent and no dangerous condition existed, and the current was not the efficient cause of the drowning. Since there was no dangerous condition, there was no duty to warn or to protect the Lock by guard rails or a

guard. The Court finds therefore that the drowning was not the proximate result of any negligence on defendant's part. . . ."

On the record before us we reject the contention that the findings of the trial court are clearly erroneous. Fed.R.Civ.P. 52(a). Although there was evidence that young Marcum was healthy and a good swimmer, plaintiff failed to prove that the current was either dangerous or causally related to the drowning. The cause of Marcum's drowning remains unknown. Notwithstanding the dispute in the evidence in respect to the location where Marcum's body submerged, nevertheless the theory advanced by Delbridge, who is an experienced diver and had participated in rescue squad operations for at least 20 years, was plausible and worthy of belief. The trial judge was justified in finding that his "testimony is more credible than the observations of these lads in the emotion of seeing their friend drowning. While wholly understandable, their version is inconsistent with the conditions found by Delbridge and with his experience as a diver." As a reviewing court we are required to give proper regard to the trial judge's opportunity to judge the credibility of witnesses. Except as to evidence which is inherently incredible, we cannot substitute our judgment for that of the trial court in the exercise of credibility choices. Dillon v. M. S. Oriental Inventor, 5 Cir., 1970, 426 F.2d 977, 978.

Under Alabama law, every action in tort consists of three elements: the existence of a legal duty by defendant to plaintiff; a breach of that duty; and damage as the proximate result. Alabama Power Company v. Guy, 1967, 281 Ala. 583, 206 So.2d 594, 599. Plaintiff failed in his attempt to prove causation, that is, that the drowning was the proximate result of any breach of duty. The evidence in that regard was merely speculative. The burden of proving disputed facts rests on the one affirming their existence and claiming rights or benefits therefrom, Ex parte Acton, 1968, 283 Ala. 121, 214 So.2d 685, 687–688. Plaintiff failed to carry his burden. Under the circumstances, we find no error in the District Court's conclusion that the drowning was not the proximate result of any negligence on the part of defendant.

Affirmed.